**M.L. MOFFETT, et al., Appellants,**

v.

**GOODYEAR TIRE & RUBBER CO., Appellee.**

No. 13565.

Court of Appeals of Texas, Austin.

May 25, 1983.

Rehearing Denied June 22, 1983.

---

Terrence Kendall, Kendall, Randle, Finch & Osborn, Austin, for appellants.

Jack Maroney, Brown, Maroney, Rose, Baker & Barber, Doug Lackey, Brown, Maroney, Rose, Baker & Barber, Austin, for appellee.

Before SHANNON, EARL W. SMITH and BRADY, JJ.

BRADY, Justice.

This is a products-liability action brought by appellants, M.L. Moffett, and his wife, Janice Moffett, individually, and as next friend of Mrs. Moffett's children, Kathy Lynn and Sherry Hambrick, against the Goodyear Tire & Rubber Company for damages sustained when a pick-up truck in which appellants were travelling overturned allegedly from the failure of the right rear tire.

Appellants urge five points of error. The first three concern the trial court's refusal to submit to the jury three requested special issues. The fourth point of error is that the jury's answer to special issue eleven, which inquired whether at the time the tire was manufactured, Goodyear so dominated and controlled Compagnie Francaise Goodyear, its French subsidiary, that it was not a separate and distinct entity, was so against the great weight and preponderance of the evidence as to be manifestly wrong. The fifth point asserts that the trial court erred in denying appellants' motion for new trial based on preventing a multiplicity of trials. In this connection, appellant states that although this cause had been pending for over two years, it was not until approximately a week before trial that appellee for the first time raised the defense that the tire was not designed, manufactured, imported or sold by Goodyear, but rather by its French subsidiary, over which it had no control or legal responsibility. Because of the undue delay it would have caused by seeking a continuance, appellants proceeded with the instant suit and filed a separate suit against French Goodyear so as to toll the statute of limitations.

The tire was manufactured by Compagnie Francaise Goodyear, a French corporation, which is a wholly-owned subsidiary of appellee, Goodyear Tire & Rubber Company. The tire was purchased from Sears Roebuck Company, although Sears Roebuck Company was not made a party to the instant suit. For the sake of brevity, appellee, Goodyear Tire & Rubber Company, will be referred to simply as "Goodyear" and its wholly-owned French subsidiary will be referred to as "French Goodyear."

Appellants alleged that the tire was defective at the time that it left the control of French Goodyear and that such defect was a producing cause of the injuries and damages sustained. Alternatively, appellants alleged that, if the tire was not defective, it nevertheless had been negligently serviced by Goodyear employees at its service store in Austin, Texas and that such negligence was the proximate cause of the plaintiffs' injuries and damages.

Goodyear answered that it had not designed, manufactured, imported or sold the tire and that it was not responsible for a tire manufactured by French Goodyear as well as alleging that the tire did not fail because of any defect or error in its installation but rather failed from appellants misuse or abuse.

The evidence showed (1) that French Goodyear was a wholly-owned subsidiary with five of its eight directors being either officers or directors at Goodyear or other Goodyear corporations;[1] (2) that both Goodyear and French Goodyear engaged in the business of the manufacture and sale of tires bearing the Goodyear trademark, and in the regular course of business, Goodyear imports and sells French Goodyear tires; and (3) that the trademark "Goodyear" appears on the particular tire in question with the words "Made in France." As stated above, the tire was not purchased by appellant from Goodyear or French Goodyear but from Sears Roebuck Company two years before its actual installation and use by appellants.

After purchase, appellants put the tires in storage. Nearly two years later, prior to leaving on a family vacation, appellants took the tires to a Goodyear Store for mounting and balancing. In June of 1977, three weeks after the tires had been placed

1. Under French law, a corporation may be a director in another corporation.

in service, the right rear tire blew out causing the truck to turn over and producing the injuries and damages which are the basis for this suit. At the trial, appellants introduced expert testimony that the tire was non-uniform in construction and that this caused it to fail. The appellees countered with their own experts who testified that the reason for the failure was under-inflation coupled with overloading.

At the conclusion of the evidence, appellants submitted four requested special issues regarding Goodyear's liability for tires manufactured by French Goodyear, three of which were refused by the trial court. Upon the answers by the jury to the special issues, the trial court entered a take-nothing judgment against appellants.

■ Appellants' first three points on appeal concern the refusal of the trial court to submit three requested special issues to the jury which inquired: (1) whether the manufacture of the tire in question by French Goodyear without any statement on it that it was not, in fact, made by Goodyear caused a concealment of a material fact; (2) whether appellant relied on the Goodyear trademark when purchasing the tires in question; and (3) whether French Goodyear is simply a conduit through which Goodyear carries on its business of manufacturing and selling tires under the Goodyear trademark. Before this Court can consider these points, we must first determine whether we are precluded from considering them when it appears from the transcript and statement of facts that appellant has failed to comply with the Texas Rules of Civil Procedure in preserving their exceptions to the trial court's refusal to submit these special issues. Tex.R.Civ.P.Ann. 273 provides:

> [e]ither party may present to the judge and request such written instructions, special issues, definitions of explanatory instructions, as he desires to be given to the jury; and the judge may give them or a part thereof, or he may refuse to give them, as he may see proper. Such requests shall be prepared and presented to the court and submitted to opposing counsel for examination and objection

within a reasonable time after the charge is given to the parties or their attorneys for examination. *A request by either party for any instructions, special issues, definitions or explanatory instructions shall be made separate and apart from such party's objections to the court's charge.* (emphasis supplied)

Appellants "objections" to the charge, which were dictated to the court reporter, were based on the failure of the trial judge to submit appellants' requested special issues to the jury. This objection did not preserve error based upon the trial court's refusal to submit special issues. "The failure ... to separately submit [these] requests from [their] objection to the court's charge results in the requests being waived." *Templeton v. Unigard Security Ins. Co.,* 550 S.W.2d 267 (Tex.1976); *accord Harvey v. Denton,* 601 S.W.2d 121 (Tex.Civ. App.1980, writ ref'd n.r.e.).

■ Besides the requirement that the requests be submitted separate and apart from the court's charge, Tex.R.Civ.P.Ann. 276 (1976) requires that, when a requested special issue is refused by the court, the judge must endorse "Refused" on the issue and sign it officially and that this will constitute a bill of exceptions. Without indication in the record that the issue was presented and refused by the trial court, either by the manner prescribed by Rule 276 or by a formal bill of exceptions, no error is shown despite the requested issues' inclusion in the transcript. *Cambridge Mut. Fire Ins. Co. v. Newton,* 638 S.W.2d 75 (Tex.App.1982, writ ref'd n.r.e.); *see Waggoner & Zeller Oil Co. v. Deike,* 508 S.W.2d 163 (Tex.Civ.App.1974), writ ref'd n.r.e.); *American Pozzolan Corp. v. Desert Trucking Co.,* 450 S.W.2d 433 (Tex.Civ.App.1970, writ ref'd n.r.e.).

■ The question remains whether the appellants have complied with Rules 273 and 276. By a supplemental transcript, the appellants have brought up three requested special issues which were separately filed. However, there is no endorsement of "Refused" by the trial court on any of the three requested special issues, and none were

signed officially by the trial judge. Blank spaces appear for the endorsements and signature of the judge. There is also no formal bill of exceptions in the record and, as we have already held, the objections to the charge based on the failure to submit these issues did not preserve this error. We therefore must hold that appellants' first three points have not been properly preserved and must be overruled.

We now come to appellants' fourth point, that the jury's answer to special issue eleven was so against the great weight and preponderance of the evidence as to be manifestly wrong.

Special issue No. 11 reads as follows: Do you find from a preponderance of the evidence that at the time the tire was manufactured, Defendant so dominated and controlled the business of Compagnie Francaise Goodyear that Compagnie Francaise Goodyear was not a separate and distinct entity in the conduct of its own business but was in effect the servant of Defendant in manufacturing the tire in question?

This issue was accompanied with a definition of "servant" and further instruction as follows:

You are further instructed that stock ownership by one corporation of the other, duplication of some or all of the directors or officers of the two corporations, or an exercise by the parent corporation of the control that stock ownership gives to stockholders does not necessarily constitute the domination and control referred to in the above question. Answer "We do" or "We do not."

No objection was made by appellants to this issue and the instruction accompanying it. The jury answered "We do not." In order to determine whether this point is well taken, we must therefore review all of the relevant evidence.

The evidence relating to this issue consisted solely of the testimony of two Goodyear employees, one employed by the appellee parent company, and the other by Goodyear International Corporation, another wholly-owned subsidiary of the parent company.

French Goodyear is a wholly-owned subsidiary of appellee. Its board of directors consists of eight persons, three members of which were Goodyear officers, and two members were the appellee corporation and another corporation wholly-owned by Goodyear. Thus, appellee potentially controlled five of the eight directors of French Goodyear. French Goodyear was primarily engaged in the manufacture and sale of tires with the Goodyear logo and was licensed by appellee to use the Goodyear trademark.

■ In *Gentry v. Credit Plan Corporation of Houston,* 528 S.W.2d 571, (Tex.1975), the Texas Supreme Court held that:

[a] subsidiary corporation will not be regarded as the alter ego of its parent merely because of stock ownership, a duplication of some or all of the directors or officers, or an exercise of the control that stock ownership gives to stockholders. On the other hand, where management and operations are assimilated to the extent that the subsidiary is simply a name or conduit through which the parent conducts its business, the corporate fiction may be disregarded to prevent fraud or injustice.

Factors to be considered in showing the requisite assimilation include whether the two file consolidated income tax returns;[1] whether operating capital is financed by the parent or borrowed from other sources;[2] the extent to which separate books and accounts are kept;[3] whether they both have common departments of businesses;[4] whether they have separate meetings of shareholders and directors;[5] whether an officer or director of the one corporation is permitted to determine the policies of the other;[6] and whether there are any other facts which also indicate that the subsidiary is a mere conduit.[7] *See Gentry v. Credit Plan Corporation of Houston,* supra; Douglas and Shanks, *Insulation from Liability Through Subsidiary Corporations,* 39 Yale L.J. 193 (1929).

■ The record does not show that appellee so dominated and controlled the business

of its French subsidiary as to render it the appellee's alter ego. We are of the opinion that the evidence shows that the two units' separate identities were maintained. We do not agree with appellants that the finding of the jury is so against the great weight and preponderance of the evidence as to be manifestly wrong. Appellants' fourth point is overruled.

Finally, appellants argue that because this case had been pending for over two years prior to appellee's assertion that the tire was not designed, manufactured, imported or sold by it, but rather by its French subsidiary, over which it had no control or responsibility and because continuation of the case to join French Goodyear would have caused undue delay, the trial court should have granted a new trial in order that appellants' subsequently-filed action against French Goodyear could have been tried with this case. We note that this information was readily available to appellant by discovery long before trial. To support their argument, the appellants assert that because there is a possibility that one of the parties in the separate suit (Sears or French Goodyear) could name appellee as a cross-defendant in the new suit, the trial court should grant a new trial in order to prevent a multiplicity of trials. This point has no merit and is overruled.

The judgment of the trial court is affirmed.