William A. BALDWIN, Appellant,

v.

HOUSEHOLD INTERNATIONAL, INC., A Delaware Corporation, Appellee.

No. 14–99–00499–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 18, 2001.

274

Joe Alfred Izen, Jr., Bellaire, for appellants.

Tim S. Leonard, Houston, for appellees.

Panel consists of Chief Justice MURPHY and Justices HUDSON and AMIDEI.[1]

## OPINION

MAURICE AMIDEI, Justice (Assigned).

This appeal raises the issue of whether a Delaware corporation's act of redeeming its preferred stock held by a Texas resident renders it subject to personal jurisdiction in Texas. The trial court answered in the negative, and entered an order sustaining the special appearance of appellee, Household International, Inc. For the reasons set forth below, we affirm the trial court's order.

### Background

Shortly after his mother's death in 1982, appellant, William Baldwin ("Baldwin"), inherited 264 shares of preferred stock in Delaware based Household International, Inc. ("Household"). Later, in October of 1990, Baldwin purchased another 100 shares of preferred stock in Household, on the open market, at a price of $69 per share. In 1991, Household then called 120

---

1. Former Justice Maurice Amidei sitting by assignment.

shares of Baldwin's preferred stock for redemption. Household subsequently sent notice of both the redemption and Baldwin's conversion rights to his record address on April 29, 1991 and again on May 30, 1991. On June 21, 1991, Baldwin's conversion rights expired. Acting through its stock transfer and redemption agent, the Harris Trust and Savings Bank of Chicago, Household exercised its right to redeem the stock on June 28, 1991 at the stated price of $50 per share. At the time of Household's redemption, Baldwin alleges that the stock had a value of over $100 per share on the New York Stock Exchange.

Six years later, in July 1997, Baldwin sued Household, alleging fraud, breach of contract, and deceptive trade practices based on Household's alleged failure to treat all owners of preferred shares equally during the redemption process. In response, Household filed a special appearance which the trial court granted. Appealing this order, Baldwin argues that the trial court erred by granting the special appearance as it had jurisdiction over Household. We affirm.

### Standard of Review

The plaintiff has the initial burden of pleading sufficient allegations to bring the nonresident defendant within the ambit of the Texas long-arm statute. *C–Loc Retention Systems, Inc. v. Hendrix*, 993 S.W.2d 473, 476 (Tex.App.—Houston [14 th Dist.] 1999, no pet.). At the special appearance hearing, the nonresident bears the burden of negating all bases of personal jurisdiction. *See CSR Ltd. v. Link*, 925 S.W.2d 591, 596 (Tex.1996). Whether the court has personal jurisdiction over a nonresident defendant is a question of law, but the proper exercise of such jurisdiction is sometimes preceded by the resolution of underlying factual disputes. *C–Loc Retention Systems, Inc. v. Hendrix*, 993 S.W.2d 473, 476 (Tex.App.—Houston [14 th Dist.] 1999, no pet.). The standard of review for determining the appropriateness of the

resolution of those facts is the factual sufficiency of the evidence review. *Id.* The reviewing court considers all evidence in the record. *Id.* However, where the record contains no findings of fact or conclusions of law, as here, all questions of fact are presumed to be found in support of the judgment. *See Hendrix* at 477. Additionally, this court must affirm the judgment of the trial court on any legal theory finding support in the evidence. *Id.*

### Texas Long–Arm Statute and Due Process

A Texas court may exercise jurisdiction over a nonresident if two conditions are satisfied. First, the Texas long-arm statute must authorize the exercise of jurisdiction. Second, the exercise of jurisdiction must be consistent with federal and state constitutional guarantees of due process. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex.1990); *Hendrix*, 993 S.W.2d at 477. The Texas long-arm statute authorizes the exercise of jurisdiction over a nonresident defendant who does business in Texas. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997). While the statute enumerates several specific acts constituting "doing business," it also includes any "other acts that may constitute doing business." *See Schlobohm*, 784 S.W.2d at 357. The "doing business" requirement permits the statute to reach as far as the federal constitutional requirements of due process will allow. *See Guardian Royal Exchange Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex.1991). Accordingly, the entire test reduces itself to a single question asking whether it is consistent with federal Constitutional requirements of due process for Texas to assert personal jurisdiction over Household. *See id.*

Under the federal Constitutional test of due process, a state may assert personal jurisdiction over a nonresident defendant if: (1) the defendant has purposefully established minimum contacts with the forum state, and (2) the exercise

of jurisdiction comports with fair play and substantial justice. *Burger King v. Rudzewicz*, 471 U.S. 462, 475–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The minimum contacts analysis has been refined to two types of jurisdiction-specific and general. Specific jurisdiction exists when the cause of action arises out of or relates to the nonresident defendant's contacts with Texas. *See Guardian*, 815 S.W.2d at 230. General jurisdiction exists when the defendant's contacts with Texas are continuous and systematic, even if the cause of action does not arise from or relate to activities conducted within Texas. *See id.* The general jurisdiction analysis is more demanding than the specific jurisdiction analysis and requires a showing of substantial activity in the forum state. *See CSR Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex.1996). The minimum contacts requirement is satisfied if either general or specific jurisdiction exists. *See id.* at 595–96.

Assuming that either general or specific jurisdiction is established, a court evaluates the contacts establishing jurisdiction in light of other legal factors to determine whether a finding of personal jurisdiction comports with principles of fair play and substantial justice. *Schlobohm*, 784 S.W.2d at 358. These factors include: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and efficient relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies. *Guardian*, 815 S.W.2d at 228. Because we find that Baldwin has not established Household's minimum contacts with Texas, however, we do not reach the "fair play and substantial justice" analysis.

### Specific Jurisdiction Analysis

Baldwin first argues that Household has minimum contacts with Texas sufficient to satisfy specific jurisdiction. As support for his specific jurisdiction claim, Baldwin alleges that Household committed tortious conduct in Texas. TEX. CIV.PRAC. & REM.CODE ANN. § 17.042(2) (Vernon 1997). As a result of this conduct, he claims, Household brought itself within the reach of the Texas long-arm statute. We disagree.

When reaching a decision to exercise or decline jurisdiction based on the defendant's alleged commission of a tort, the trial court should rely only upon the necessary jurisdictional facts and should not reach the merits of the case. *Arterbury v. American Bank & Trust Co.*, 553 S.W.2d 943 (Tex.Civ.App.—Texarkana 1977, no writ); TEX.R.CIV.P. 120a. In other words, ultimate liability in tort is not a jurisdictional fact, and the merits of the cause are not at issue. *Portland Sav. & Loan Ass'n. v. Bernstein*, 716 S.W.2d 532, 535 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.). When the plaintiff alleges an action in tort that arose out of an act committed in Texas, the necessary proof is only that the purposeful act was committed in this State. *Arterbury*, 553 S.W.2d at 947. Under the "commission of a tort" provision of the long arm statute, the jurisdictional requirements are met when the defendant, personally or through an agent, is the author of an act or omission within the forum state, and the petition states a cause of action in tort arising from such conduct. The act or omission within the state is a sufficient basis for the exercise of jurisdiction to determine whether or not the act or omission gives rise to liability in tort. *See Bernstein*, 716 S.W.2d at 535.

After a close review of the record, we find that Baldwin failed to meet his initial burden of pleading allegations sufficient to bring Household within the tort provision of the Texas long-arm statute. Baldwin's petition vaguely sets out a cause of action, alleging that Household made fraudulent representations resulting in a "spurious plan" to redeem his preferred stock. However, the petition does not allege where or when Household allegedly made

these representations. Instead, Baldwin argues that Household perpetrated these misrepresentations, and thus made minimum contacts with Texas, in two ways: (1) by unsuccessfully attempting to contact him by phone at his Texas home, and (2) by mailing him a notice that his preferred stock had been involuntarily redeemed. Assuming that Household made a misrepresentation, its two contacts with Baldwin do not provide the necessary proof that the purposeful act of misrepresentation was committed in this state. Obviously, Household conveyed no misrepresentation to Baldwin through an unsuccessfully placed phone call. Likewise, Baldwin does not argue that Household's notice of redemption imparted to him any misrepresentation, but merely notice that his stock had been redeemed. Accordingly, Baldwin's specific jurisdiction claim fails.

### General Jurisdiction

Baldwin next asserts that Household has continuous and systematic contacts with Texas sufficient to satisfy general jurisdiction. Specifically, he argues that, because Household does business through the local activities of its subsidiary, Household Financial, it is subject to the general jurisdiction of Texas courts. We disagree.

Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state simply because its subsidiary is present or doing business there. *Conner v. ContiCarriers and Terminals*, 944 S.W.2d 405, 418 (Tex.App.—Houston [14th Dist.] 1997, no writ). In some circumstances, however, a close relationship between a parent and its subsidiary may justify a finding that the parent "does business" in a jurisdiction through the local activities of its subsidiaries. *Id.* The rationale for such an exercise of jurisdiction is that the parent corporation exerts such dominance and control over its subsidiary that, in reality, they do not really constitute separate and distinct entities but are one and the same corporation for purposes of jurisdiction. *Id.* Because Baldwin asserts jurisdiction on this basis,

i.e., that Household Financial is merely a conduit through which appellee Household International does business in Texas, the burden is on him to prove the existence of that agency relationship. *Id.*

Under Texas law, "fusing" a parent corporation and its subsidiary for jurisdictional purposes requires that a party prove that the parent controls the internal business operations and affairs of the subsidiary. *Id.* at 418–19. The degree and control exercised by the parent must be greater than that normally associated with common ownership and directorship. *Id.* at 419. All relevant facts and circumstances surrounding operations of the parent and subsidiary must be examined to determine whether two separate and distinct corporate entities exist. *Id.* In the present case, the record is silent as to any such examination of circumstances regarding the parent corporation, Household, and its subsidiary. Baldwin likewise fails to cite to any such examination in the record. Under our standard of review, then, we presume that the trial court resolved any factual disputes in support of its order when ruling on this issue. Accordingly, Household did not do business in Texas through its subsidiary. We overrule Baldwin's single issue for review and affirm the trial court's order dismissing the suit.