**EL PUERTO DE LIVERPOOL, S.A. DE C.V., Appellant,**

v.

**SERVI MUNDO LLANTERO S.A. DE C.V., Appellee.**

**No. 13–01–552–CV.**

Court of Appeals of Texas, Corpus Christi.

May 30, 2002.

Opinion Denied Rehearing Aug. 1, 2002.

Concurring Opinion on Denial of Rehearing En Banc Aug. 23, 2002.

David Lopez, Ricardo G. Cedillo, Steve A. Chiscano, Davis, Cedillo & Mendoza, San Antonio, for appellant.

David H. Hockema, Hockema, Tippit & Escobedo, McAllen, J. Brett Busby, Kevin Dubose, Hogan, Dubose & Townsend, John M. O'Quinn, O'Quinn & Laminack, Houston, Michael J. Garza, McAllen, for appellee.

Before Chief Justice VALDEZ and Justices HINOJOSA and RODRIGUEZ.

## OPINION

Opinion by Chief Justice VALDEZ.

El Puerto De Liverpool, S.A. de C.V. ("El Puerto") brings this accelerated, interlocutory appeal of an order denying its special appearance. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(7) (Vernon Supp.2002); TEX.R.APP. P. 28.1.

Appellant El Puerto raises four issues on appeal. Specifically, El Puerto complains that the trial court's denial of its special appearance (1) is not supported by the pleadings, (2) violates the fourteenth amendment because El Puerto contends its only contact with Texas is a "pass-through" bank account, (3) cannot be based on an alter ego relationship between El Puerto and its subsidiary corporations, and (4) fails to comport with fair play and substantial justice.

We affirm the trial court's ruling denying El Puerto's special appearance.

### Background

El Puerto is a holding company engaged in the merchandising business in Mexico. Through its subsidiaries, it operates department and retail stores, purchases and imports goods for resale in Mexico, and owns retail-related real estate investments. El Puerto entered into a joint venture with Kmart Corporation to own and operate retail Kmart super centers throughout Mexico. Servi Mundo Llantero, S.A. de C.V. acquired the exclusive right to construct, operate, and manage the retail automotive centers of those Kmart super centers; however, the joint venture terminated after four stores were opened.

Consequently, Servi Mundo Llantero, S.A. de C.V., Servi Mundo Llantero U.S.A., Inc., and Enrique Kanarak, one of the principals of Servi Mundo Llantero, S.A. de C.V., brought suit against Kmart Corporation, VTA, Inc., El Puerto, and Jorge Ortega. These plaintiffs (referred to collectively as "Servi Mundo") alleged wrongful conduct in the formation and termination of their agreement regarding the retail automotive centers. Specifically, Servi Mundo pleaded causes of action for fraudulent inducement, negligent misrepresentation, negligence, gross negligence, civil conspiracy, common law fraud, constructive fraud, promissory estoppel, and tortious interference. El Puerto filed a special appearance on grounds that it is a foreign corporation that is not subject to general or specific jurisdiction in Texas. After the hearing on El Puerto's special appearance, the trial court concluded that El Puerto was subject to jurisdiction in Texas and denied the special appearance based on El Puerto's possession and use of a Texas bank account and based on El Puerto's relationship with subsidiary corporations who are undisputedly subject to jurisdiction in Texas. This appeal ensued.

### General Jurisdiction

A defendant's contacts with a forum can give rise to either general or specific jurisdiction. General jurisdiction is present when a defendant's contacts are continuous and systematic, permitting the forum to exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. *See CSR Ltd. v. Link,* 925 S.W.2d 591, 595 (Tex.1996). General jurisdiction requires a showing that the defendant conducts substantial activities within the forum, a more demanding minimum contacts analysis than for specific jurisdiction. *Id.* In contrast, specific jurisdiction is established if the defendant's alleged liability arises from or is related to an activity conducted within the forum. *Id.* The issue in this case is whether El Puerto is subject to general jurisdiction in Texas.

628

### Standard of Review

■ We begin with the presumption that the court has jurisdiction over the parties. *See Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 203 (Tex.1985); *Angelou v. African Overseas Union*, 33 S.W.3d 269, 277 (Tex.App.-Houston [14th Dist.] 2000, no pet.). A nonresident defendant bears the burden of negating all bases of personal jurisdiction to prevail in a special appearance. *CSR Ltd.*, 925 S.W.2d at 596; *Kawasaki Steel Corp.*, 699 S.W.2d at 203; *Fish v. Tandy Corp.*, 948 S.W.2d 886, 891 (Tex.App.-Fort Worth 1997, writ denied).

■ In considering an order granting or denying a special appearance, we review the trial court's resolution of disputed factual issues under a factual sufficiency of the evidence standard, and review the trial court's conclusions of law de novo. *LeBlanc v. Kyle*, 28 S.W.3d 99, 102 (Tex. App.-Texarkana 2000, pet. denied) (citations omitted); *see Ahadi v. Ahadi*, 61 S.W.3d 714, 718 (Tex.App.-Corpus Christi 2001, no pet. h.) (existence of personal jurisdiction is a question of law); *BHP de Venezuela, C.A. v. Casteig*, 994 S.W.2d 321, 326 (Tex.App.-Corpus Christi 1999, pet. denied) (op. on re'hg) (same); *Valsangiacomo v. Am. Juice Import, Inc.*, 35 S.W.3d 201, 205 (Tex.App.-Corpus Christi 2000, no pet.) (applying factual sufficiency standard of review to trial court's resolution of factual disputes); *De Prins v. Van Damme*, 953 S.W.2d 7, 13 (Tex.App.-Tyler 1997,

writ denied) (same).[1] However, if a special appearance is based on undisputed or established facts, an appellate court instead conducts a de novo review of the trial court's order granting a special appearance as a question of law. *Goodenbour v. Goodenbour*, 64 S.W.3d 69, 75 (Tex.App.-Austin 2001, pet. denied); *Ahadi*, 61 S.W.3d at 718. In any event, in conducting its review, the appellate court considers all of the evidence in the record. *BHP de Venezuela, C.A.*, 994 S.W.2d at 326; *Vosko v. Chase Manhattan Bank, N.A.*, 909 S.W.2d 95, 99 (Tex.App.-Houston [14th Dist.] 1995, writ denied).

■ If the trial court makes findings of fact, they are binding on the appellate court unless challenged on appeal. *Royal Mortgage Corp. v. Montague*, 41 S.W.3d 721, 730 (Tex.App.-Fort Worth 2001, no pet.); *Silva v. Ysleta Del Sur Pueblo*, 28 S.W.3d 122, 124 (Tex.App.-El Paso 2000, pet. denied); *Linton v. Airbus Industrie*, 934 S.W.2d 754, 757 (Tex.App.-Houston [14th Dist.] 1996, writ denied); *Hotel Partners v. KPMG Peat Marwick*, 847 S.W.2d 630, 632 (Tex.App.-Dallas 1993, writ denied). An appellate court may not disregard findings of fact unless the findings are so contrary to the overwhelming weight of the evidence as to be manifestly wrong. *See Angelou*, 33 S.W.3d at 277; *BHP de Venezuela, C.A.*, 994 S.W.2d at 327; *Hotel Partners*, 847 S.W.2d at 632. As the trier of fact, the trial judge may draw reasonable inferences from the evi-

---

1. In contrast to other courts, the San Antonio Court of Appeals generally applies an abuse of discretion standard to a ruling on a special appearance. *See, e.g., Whalen v. Laredo Nat'l Bancshares, Inc.*, 37 S.W.3d 89, 91 (Tex.App.-San Antonio 2000, pet. denied); *Transportes Aereos de Coahuila, S.A. v. Falcon*, 5 S.W.3d 712, 717 (Tex.App.-San Antonio 1999, pet. denied). However, if the record contains findings of fact and conclusions of law, the San Antonio Court instead reviews the find-

ings of fact for sufficiency of the evidence, and reviews the trial court's conclusions of law de novo. *See Lonza AG v. Blum*, 70 S.W.3d 184, 188–89 (Tex.App.-San Antonio 2001, no pet.). The San Antonio court has questioned the appropriate standard of review, and discussed application of a de novo standard. *See Joe Guerra Exxon Station v. Michelin Tyre Pub. Ltd. Co.*, 32 S.W.3d 383, 386 (Tex.App.-San Antonio 2000, no pet.).

dence. *Gen. Refractories Co. v. Martin,* 8 S.W.3d 818, 820 (Tex.App.-Beaumont 2000, pet. denied); *Hotel Partners,* 847 S.W.2d at 632.

We will affirm the trial court's ruling if we can uphold it on any legal theory supported by the evidence. *LeBlanc v. Kyle,* 28 S.W.3d 99, 101–02 (Tex.App.-Texarkana 2000, pet. denied); *Fish,* 948 S.W.2d at 892; *see Guardian Royal Exch. Assurance Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex.1991).

### Pleading Jurisdictional Grounds

██ In its first issue, El Puerto argues that it is entitled to dismissal because the plaintiffs below failed to plead that El Puerto is subject to the general jurisdiction of Texas courts. The plaintiff has the initial burden to plead "sufficient" allegations to show jurisdiction in Texas. *McKanna v. Edgar,* 388 S.W.2d 927, 930 (Tex.1965); *Frank A. Smith Sales, Inc. v. Atl. Aero, Inc.,* 31 S.W.3d 742, 746 (Tex. App.-Corpus Christi 2000, no pet.). Here, appellee pleaded that El Puerto is "doing business in the State of Texas." *See* Tex. Civ. Prac. & Rem.Code Ann. § 17.042 (Vernon 1997) (long arm statute regarding "doing business"). Appellee further pleaded that El Puerto committed torts in Texas. Appellee's pleadings were sufficiently clear regarding its jurisdictional allegations. *See id.*

██ Moreover, even if appellee's pleadings were not sufficient to show jurisdiction in Texas, we would conclude that appellant waived this complaint because it did not raise this issue in a motion to quash. Defective jurisdictional allegations in a petition must be challenged by a motion to quash, not by special appearance. *Kawasaki Steel Corp.,* 699 S.W.2d at 203; *Haught v. Agric. Prod. Credit Ass.,* 39 S.W.3d 252, 257 (Tex.App.-Tyler 2000, no pet.). El Puerto's first issue is overruled.

### Due Process Clause

In its second issue, El Puerto argues that it violates the due process clause of the fourteenth amendment for a Texas court to assert general jurisdiction over a foreign defendant when the defendant's "only" contact with Texas is a single pass-through bank account "that is not directed toward Texas." As discussed below, however, we cannot accept El Puerto's characterization of its business contacts with Texas.

██ Under the due process clause of the fourteenth amendment, a defendant must have certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *CSR, Ltd.,* 925 S.W.2d at 594. A nonresident defendant that has purposefully availed itself of the privileges and benefits of conducting business in the foreign jurisdiction has sufficient contacts with the forum to confer personal jurisdiction. *Id.* A defendant should not be subjected to the jurisdiction of a foreign court based on random, fortuitous, or attenuated contacts. *Id.* at 595. Minimum contacts are particularly important when the defendant is from a different country because of the unique and onerous burden placed on a party called upon to defend a suit in a foreign legal system. *Id.*

██ The inquiry for determining whether minimum contacts support general jurisdiction "demands ... that all contacts be carefully investigated, compiled, sorted, and analyzed for proof of a pattern of continuing and systematic activity." *Schlobohm v. Schapiro,* 784 S.W.2d 355, 359 (Tex.1990); *Michel v. Rocket Eng'g Corp.,* 45 S.W.3d 658, 681 (Tex.App.-Fort Worth 2001, no pet.).

In the instant case, the trial court concluded that El Puerto was subject to general jurisdiction in Texas based on its own forum contacts, as well as its parent-subsidiary relationships. With regard to El Puerto's forum contacts, the evidence shows that El Puerto possessed a bank account with Nationsbank of Texas in Dallas. El Puerto argues that it is not subject to general jurisdiction in Texas based on this bank account because the account is not a minimum contact purposefully directed toward Texas. The trial court rejected this argument and expressly found that El Puerto has "purposefully made continuous and systematic use of its Texas bank account, on a grand scale, to further its business and investment objectives."

 The trial court made several findings of fact and conclusions of law regarding El Puerto's bank account. El Puerto does not challenge the trial court's findings of fact that:

(1) El Puerto voluntarily and purposefully opened a business money market investment account at least as early as 1992, and that account remains open today;

(2) During the period for which bank records have been produced, November 1992 through February 1997, El Puerto deposited into and withdrew from this account anywhere from tens to several hundreds of millions of U.S. dollars each month;

(3) Because of the high volume of transactions in the account, El Puerto converted the account into a different type of account in February of 1995 to avoid incurring excessive transaction fees; and

(4) El Puerto used this account to exchange pesos for dollars so that it could access international markets, and to save dollars to pay off bonds, which were Eurobonds issued in the United States and denominated in dollars.

Because El Puerto does not challenge these findings of fact on appeal, those findings are binding on this Court unless the contrary is established as a matter of law, or if there is no evidence to support the finding. *McGalliard v. Kuhlmann,* 722 S.W.2d 694, 696 (Tex.1986); *Nikolai v. Strate,* 922 S.W.2d 229, 236 (Tex.App.-Fort Worth 1996, writ denied). After reviewing the record, we conclude that these findings are supported by the evidence.

El Puerto challenges only three of the trial court's findings of fact regarding the bank account: (1) that it used its account "to obtain various loans in U.S. dollars, the proceeds of which went through this account;" (2) that it has "invested many millions of dollars from its Texas bank account in securities, including short-term interest-bearing investments called 'overnights' offered by Nationsbank of Texas;" and (3) that it "has purposefully made continuous and systematic use of its Texas bank account to further its business and investment objectives." El Puerto argues that the trial court's finding that it used the Texas bank account to obtain loans is against the great weight and preponderance of the evidence because El Puerto has not obtained loans from Texas banks. This argument misstates the trial court's explicit finding as stated above. With regard to the trial court's finding that El Puerto invested monies from the Texas bank account in overnights, El Puerto argues merely that there is no evidence that overnights are a form of securities, but does not otherwise attack the trial court's finding. As discussed herein, El Puerto's attack on the trial court's finding that it made "continuous and systematic use" of the bank account directly relates to whether or not El Puerto's use of the account

will subject it to general jurisdiction in Texas.

 Whether or not a defendant possesses a bank account in Texas is a factor traditionally considered in determining whether that defendant is subject to the general jurisdiction of the State. *See, e.g., CSR*, 925 S.W.2d at 595; *BHP de Venezuela, C.A.*, 994 S.W.2d at 327; *see also Transportacion Especial Autorizada, S.A. de C.V. v. Seguros Comercial Am., S.A. de C.V.*, 978.S.W.2d 716, 720 (Tex.App.-Austin 1998, no pet.) (factor that defendant "invests in its business from Texas by maintaining a bank account" in Texas supports exercise of general jurisdiction).

 Several Texas cases have considered the circumstances under which a bank account may suffice to subject a defendant to personal jurisdiction in Texas. Consonant with the other queries regarding general jurisdiction, the courts analyzing this issue focus on the quality and nature of the defendant's contacts with the forum state. In accordance with the standard rules regarding minimum contact analysis, use of the account must be continuous and systematic in order to support the exercise of general jurisdiction. *Transportes Aereos de Coahuila, S.A. v. Falcon*, 5 S.W.3d 712, 720 (Tex.App.-San Antonio 1999, pet. denied)(infrequent use of bank account to assist in sporadic purchases insufficient to warrant general jurisdiction). Further, the total amount of funds in the account and the number of transactions running through the account are not by themselves determinative of the issue of jurisdiction. *See, e.g., Primera Vista v. Banca Serfin*, 974 S.W.2d 918, 926 (Tex.App.-El Paso 1998, no pet.). Moreover, mere "pass-through" bank accounts, where the account merely serves as a conduit for the funds in transit, will not by itself result in general jurisdiction over the defendant. *See id.*

In *Primera Vista*, Banca Serfin's annualized deposits in eleven Texas banks totaled more than one and one-half billion dollars and its annualized transactions numbered more than thirty thousand. In support of its special appearance, Banca Serfin presented testimony that its Texas bank accounts were merely "pass-through" accounts used to facilitate its clients' transactions outside of Mexico, as were its lines of credit maintained at Texas banks. In considering these facts, the El Paso Court of Appeals stated that:

Although Banca Serfin charged its Mexican customers for use of the Texas bank accounts and lines of credit, its maintenance and use of the accounts is more in the nature of facilitating its Mexican customers' business ventures in Texas than engaging in its own business activities. Accordingly, there was evidence from which the trial court could have reasonably concluded that Banca Serfin's Texas accounts are a by-product of Banca Serfin's business in Mexico with Mexican importer customers rather than an indication of any substantial, purposeful business activity conducted by Banca Serfin on its own behalf in Texas. By maintaining and charging for the use of the Texas accounts, Banca Serfin clearly conducts some marginal business activity in the state. This activity alone, however, is somewhat attenuated and not substantial enough to subject Banca Serfin to suit in Texas for all purposes.

*Id.* at 926. Thus, by focusing on whether the accounts benefitted Banca Serfin or third parties, the El Paso court concluded that Banca Serfin's substantial bank accounts and lines of credit did not suffice to subject Banca Serfin to general jurisdiction in Texas.

Similarly, use of accounts which are not "directed" toward Texas will not create general jurisdiction. *See, e.g., Preussag v.*

*Coleman,* 16 S.W.3d 110, 123–24 (Tex. App.-Houston [1st Dist.] 2000, pet. dism'd w.o.j.). In *Preussag,* the First District Court of Appeals in Houston considered whether a parent company's banking system with its Texas subsidiaries sufficed to subject the parent company to general jurisdiction in Texas:

The six indirect Texas subsidiaries' use of Preussag AG's "banking" and financing systems does not show Preussag AG's purposeful contacts with Texas. Preussag AG's services were provided to the six indirect Texas subsidiaries as they would be to any member of the Preussag Group in any location....

Like the pass-through accounts of the Mexican bank in *Primera Vista,* Preussag AG's 'banking' system-in which Preussag Group members deposit excess funds daily with Preussag AG, Preussag AG lends money on commercial terms, Preussag AG credits and debits members' accounts for inter-member sales, and foreign currency transactions are conducted-exists to accommodate the whole Preussag Group, of which Preussag AG is a part. The fact that Preussag AG deposits funds under this system in some subsidiaries' Texas bank accounts is a fortuitous contact, since the 'banking' system itself is not directed toward Texas.

*Id.* at 123–24. In *Preussag,* the parent company did not possess a Texas bank account, but merely conducted financial and banking transactions in the Texas bank accounts of its Texas subsidiary corporations. *See id.*

Considering our analysis of the foregoing cases, we must keep in mind that fundamental question is whether, focusing on the quality of El Puerto's use of the bank account, El Puerto purposefully availed itself of the privileges and benefits of conducting business in Texas, and whether El Puerto's use of the account constituted "substantial" activities in Texas. *See CSR Ltd.,* 925 S.W.2d at 594–95.

In this case, the account was originally opened in 1992 as a business investment account, only allowing three checks during each statement period, and was changed to a business economy checking account in 1995 in order to allow for a greater number of transactions during each statement period. According to the appellant, El Puerto conducted an average of approximately one hundred and seventy transactions in the account annually.

Miguel Pons, an officer and employee of El Puerto, testified that the bank account is used generally "for the purposes of the company's business." Because the company is listed in the Mexican stock exchange, "it can have access to some markets," so the "purpose of the account basically is for the needs of the exchange rate between Mexico and a hard currency." Thus, according to Pons, the "main purpose is to have hard currency [for the] businesses of El Puerto."

Another officer of El Puerto, Felipe Jacquez, similarly testified that the purpose of the account is to provide dollars for the company's operating needs. Jacquez testified that El Puerto and its subsidiaries need to have Texas accounts in order to facilitate their businesses in Mexico. Jacquez further testified that El Puerto's account was used as a vehicle to hold loans payable to El Puerto in dollars.

According to Pons, the account is "not so much" used as an investment. Money withdrawn from the account can be used for "[m]any things," including investment in an "overnight," which Pons defined as an "overnight instrument, one day to another, that bears interest, in the same bank." The record showed, for example, an overnight in the amount of fifty million

dollars dated January 14, 1994, with a maturity date of January 18, 1994, and an amount due of $50,015,625.00 at maturity.

Pons further testified that the company utilized the account to save fifty million dollars to pay for a Eurobond payable in dollars. According to Pons, dollar accounts in Mexico are called "Mex dollars, and a Mex dollar is only worth in Mexico." Thus, because the company had a debt payable in dollars, it "needed a means to take the money over there." In terms of the account's location in Texas, Pons testified that "Texas was close," and he decided to utilize the bank in Dallas in order to have dollars that the company could not have in Mexico.

Pons further testified that El Puerto used the bank account to transfer dollars to its subsidiaries. The subsidiary corporations then purchased "cheaper" dollars, and reimbursed the money to El Puerto. For example, the bank statements showed a transfer of five hundred thousand dollars from El Puerto to Distribuidora, and Pons conceded that the bank statements included several similar transactions.

Based on our review of the record evidence, we conclude that the trial court's findings regarding El Puerto's bank account are not so contrary to the overwhelming weight of the evidence as to be manifestly wrong. Rather, the record contains evidence from which the trial court could have found that El Puerto purposefully established and maintained the requisite minimum contacts with Texas. In reaching this conclusion, we consider not the number, but the quality and nature of the contacts provided by El Puerto's use of the account. El Puerto's use of the account was continuous, spanning at least the period of 1992 to 1997, and systematic, with numerous and repeated transactions. There was testimony from which the trial court could have inferred that Pons specifi-

cally chose Texas, rather than other states, as the locale for its bank account, and therefore purposefully directed its banking activities toward Texas. El Puerto used the account not to benefit customers or third parties but to directly facilitate its own business. Moreover, the account at issue cannot be characterized as a mere pass through account. Rather, there was evidence indicating that El Puerto directly utilized the account for substantive transactions: El Puerto used the account to provide access to dollars for use in the international market, exchange currency, invest money, save dollars to service a debt payable in dollars, deposit loans payable in dollars, and provide profits to its subsidiary corporations, and thus indirectly to itself, through the transfer of dollars from the account.

Through the use of its bank account, El Puerto conducted "substantial" activities in Texas and obtained privileges and benefits thereby. We therefore overrule El Puerto's second issue. However, we need not decide whether or not this contact alone would render El Puerto subject to general jurisdiction in Texas, rather we consider the totality of El Puerto's contacts with Texas. *See Schlobohm*, 784 S.W.2d at 359. The trial court concluded that El Puerto was subject to general jurisdiction in Texas based on its use of the bank account and based on its relationship with its subsidiaries which are subject to jurisdiction in Texas. Therefore, we will proceed to address appellant's third issue regarding this relationship.

### *Alter Ego*

In its third issue, El Puerto argues that a plaintiff asserting the "alter ego" theory of jurisdiction has the burden to prove the degree of control that is normal in a parent-subsidiary relationship and further must produce evidence that the parent's

relationship with its subsidiary is not a normal parent-subsidiary relationship. In this case, the trial court concluded that El Puerto was subject to general jurisdiction in Texas because El Puerto does business in Texas through the business activities of its subsidiary corporations that are subject to general jurisdiction in Texas. This conclusion is based on the "alter ego" theory of jurisdiction.

Generally, a foreign parent corporation is not subject to the jurisdiction of a foreign state simply because its subsidiary is present or doing business there. *Baldwin v. Household Int'l, Inc.,* 36 S.W.3d 273, 278 (Tex.App.-Houston [14th Dist.] 2001, no pet.); *Daimler–Benz Aktiengesellschaft v. Olson,* 21 S.W.3d 707, 720 (Tex.App.-Austin 2000, pet. dism'd w.o.j., pet. cert. filed); *Preussag,* 16 S.W.3d at 119. However, in some circumstances, a close relationship between a parent and a subsidiary may justify a finding that the parent does business in a jurisdiction through the local activities of its subsidiaries. *Baldwin,* 36 S.W.3d at 278; *Conner v. ContiCarriers and Terminals,* 944 S.W.2d 405, 418 (Tex.App.-Houston [14th Dist.] 1997, no writ). The rationale for an exercise of jurisdiction is that the parent corporation exerts such dominance and control over its subsidiary that they do not in reality constitute separate and distinct corporate entities but are one and the same corporation for purposes of jurisdiction. *Baldwin,* 36 S.W.3d at 278; *Conner,* 944 S.W.2d at 418. The degree of control exercised by the parent must be greater than that normally associated with common ownership and directorship. *Conner,* 944 S.W.2d at 419. Thus, the alter ego doctrine applies where the subsidiary is simply a conduit through which the parent conducts its business. *Jones v. Beech Aircraft,* 995 S.W.2d 767, 771 (Tex.App.-San Antonio 1999, pet. dism'd w.o.j.).

The analysis undertaken when determining whether separate corporate entities should be treated as one for jurisdictional purposes is different than that undertaken when determining whether separate corporate entities should be treated as one for liability purposes. *See Olson,* 21 S.W.3d at 721 n. 5. The operative question in a jurisdictional analysis is whether El Puerto's subsidiary corporations are mere "divisions" or "branches" of a larger whole, such that the subsidiaries' contacts with Texas should be attributed to El Puerto. *Id.*

Courts must examine all relevant facts and circumstances to determine whether the parent and subsidiary should be considered separate or joined. *Id.* at 720; *Baldwin,* 36 S.W.3d at 278; *Conner,* 944 S.W.2d at 418–19. Factors to consider include:

(1) whether distinct and adequately capitalized financial units are incorporated and maintained;

(2) whether daily operations of the corporations are separate;

(3) whether formal barriers between the management of the entities are erected, with each functioning in its own best interest;

(4) whether the companies filed consolidated tax returns;

(5) whether operating capital is financed by the parent or borrowed from other sources;

(6) whether the subsidiary's stock is owned by the parent;

(7) whether the companies share common officers and directors;

(8) the extent to which separate books and accounts are kept;

(9) whether the companies have common departments of businesses;

(10) whether the companies have separate meetings of shareholders and directors;

(11) whether an officer or director of one corporation is permitted to determine the policies of the other;

(12) whether those with whom the corporation comes into contact are apprized of their separate identity; and

(13) the extent to which contracts between the parent and subsidiary favor one over the other.

*Olson,* 21 S.W.3d at 720–21; *Conner,* 944 S.W.2d at 419; *Moffett v. Goodyear Tire & Rubber Co.,* 652 S.W.2d 609, 613 (Tex. App.-Austin 1983, writ ref'd n.r.e.). Not all of these factors need be present or considered. *Olson,* 21 S.W.3d at 721.

■■■ The record shows that El Puerto is a holding company engaged in the merchandising business in Mexico. It has two direct subsidiary corporations relevant to this appeal: Operadora Liverpool and Servicios Liverpool. Operadora is a Mexican corporation whose function is "to provide the utilities to El Puerto." It does not provide services to any company other than El Puerto. El Puerto created Operadora as an entity to own stock in indirect subsidiary corporations. El Puerto owns 99.9% of Operadora. Operadora in turn has two direct subsidiaries: Distribuidora Liverpool and Black Pool Trading Company. Operadora owns all of the stock of Black Pool and 99.9% of the stock of Distribuidora. The remaining shares of Operadora and Distribuidora are held by other companies owned by El Puerto.

The parties have stipulated that Distribuidora does business in Texas, and would be subject to jurisdiction here. Distribuidora purchases products for retail sale. Black Pool is a Texas corporation who acts as an "interchange company for importation" for Distribuidora, and performs works only for Distribuidora.

Servicios, El Puerto's other direct subsidiary, "has personnel and the computer systems," and "it services the entire organization" of companies to which El Puerto belongs. Servicios provides employees for the various El Puerto subsidiaries, and handles the compensation for those employees. The parties have stipulated that Servicios does business in Texas and would be subject to jurisdiction here.

We conclude that the conflicting evidence authorized the trial court to find that El Puerto's subsidiary corporations are mere "divisions" or "branches" of a larger whole, such that the subsidiaries' contacts with Texas should be attributed to El Puerto. *See Olson,* 21 S.W.3d at 721 n. 5. Although each company in the El Puerto family performs a separate and distinct function, the companies work together as an interlocking whole. There is no evidence that the companies provide similar services to corporations outside of El Puerto's corporate family.

There are no formal barriers between the management of the separate entities, and there is extensive overlapping of officers and directors of El Puerto and its subsidiaries, Servicios, Operadora, and Distribuidora. Evidence indicates that El Puerto's board of directors participates in and controls the policies, operations, and activities of its subsidiary corporations. For example, Pons agreed that El Puerto's board of directors controls Operadora, and that Operadora is "under the control and direction" of El Puerto. He further stated that Distribuidora is "under the control and operation" of Operadora. Pons agreed that Black Pool falls under El Puerto's direction and control, "[o]n the way" or "[i]n a certain way."

El Puerto provides operating capital to its subsidiaries, and continues to fund its

subsidiaries as necessary. Transactions between the companies inure to the benefit of one corporation over another, as for example, when El Puerto provides its subsidiaries with "loans" without charging interest. The companies share computer systems and have a unified employment department. Ownership of stock is held almost exclusively by parent companies, and is otherwise maintained in the El Puerto family of companies. Although each of the companies maintains separate books and accounts and files separate tax returns, the companies' financial information is reviewed in a consolidated annual report.

El Puerto argues that jurisdiction cannot be based on the alter ego doctrine because the plaintiff below failed to produce evidence of the "normal" degree of control exercised by a parent corporation over a subsidiary, or what constitutes a "normal" parent-subsidiary relationship. We reject appellant's contention. The existence of an alter ego relationship is determined by considering all relevant facts and circumstances, utilizing the foregoing factors articulated by the courts. *See Olson*, 21 S.W.3d at 720. Moreover, appellant's argument is premised on the belief

that plaintiffs have the burden of proof to establish that El Puerto has an alter ego relationship with its subsidiaries, and this allocation of the burden of proof is questionable.[2]

We conclude that the trial court's findings of fact are supported by factually sufficient evidence, and are not so contrary to the overwhelming weight of the evidence as to be manifestly wrong. While formally separate, the companies form a functional whole in the marketing and retail business. *See id.* We thus conclude that it is proper to view El Puerto as doing business in Texas through the activities of Servicios, Distribuidora, and Black Pool. El Puerto's third issue is overruled.

Moreover, based on the trial court's findings and the record evidence, we further determine that the trial court's ruling that El Puerto is subject to jurisdiction in Texas can be affirmed on the single business enterprise theory. *See 3–D Elec. Co. v. Barnett Constr. Co.*, 706 S.W.2d 135, 139–40 (Tex.App.-Dallas 1986, writ ref'd n.r.e.). The "single business enterprise theory" is based on equity and arises from partnership principles: it applies when

**2.** The Texas Supreme Court has clearly stated that a nonresident defendant must negate all bases of personal jurisdiction to prevail in a special appearance. *CSR Ltd. v. Link*, 925 S.W.2d 591, 596 (Tex.1996); *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 203 (Tex. 1985). Consistent with this general pronouncement, several courts have held that the defendant holds the burden of proof to disprove jurisdiction, specifically with regard to the alter ego doctrine. *See Stauffacher v. Lone Star Mud, Inc.*, 54 S.W.3d 810, 816 (Tex.App.-Texarkana 2001, no pet.) (citing *Haught v. Agric. Prod. Credit Ass'n*, 39 S.W.3d 252, 263 (Tex.App.-Tyler 2000, no pet.); *Cadle v. Graubart*, 990 S.W.2d 469, 473 (Tex.App.-Beaumont 1999, no pet.); *Al–Turki v. Taher*, 958 S.W.2d 258, 263 (Tex.App.-Eastland 1997, pet. denied)). Nevertheless, some appellate courts place the burden to prove alter

ego jurisdiction on the plaintiff below, *see Baldwin v. Household Int'l Inc.*, 36 S.W.3d 273, 278 (Tex.App.-Houston [14th Dist.] 2001, no pet.); *Daimler–Benz Aktiengesellschaft v. Olson*, 21 S.W.3d at 707, 721 (Tex.App.-Austin 2000, pet. dism'd w.o.j.); *Jones v. Beech Aircraft Corp.*, 995 S.W.2d 767, 771 (Tex.App.-San Antonio 1999, pet. dism'd); *Conner v. ContiCarriers & Terminals, Inc.*, 944 S.W.2d 405, 418 (Tex.App.-Houston [14th Dist.1997, no writ]; *3–D Elec. Co. v. Barnett Constr. Co.*, 706 S.W.2d 135, 139–40 (Tex.App.-Dallas 1986, writ ref'd n.r.e.)); *cf. Frank A. Smith Sales, Inc. v. Atlantic Aero, Inc.*, 31 S.W.3d 742, 746 (Tex.App.-Corpus Christi 2000, no pet.)(plaintiff bears ultimate burden of proof to establish jurisdiction); *MGM Grand Hotel, Inc. v. Castro*, 8 S.W.3d 403, 408 n. 2 (Tex. App.-Corpus Christi 1999, no pet.)(same).

corporations are not operated as separate entities, but rather integrate their resources to achieve a common business purpose. *See N. Am. Van Lines, Inc. v. Emmons,* 50 S.W.3d 103, 120 (Tex.App.-Beaumont 2001, no pet.). Factors relevant to determining whether a single business enterprise is present include (1) common employees, (2) common offices, (3) centralized accounting, (4) payment of wages by one corporation to another corporation's employees, (5) common business name, (6) services rendered by the employees of one corporation on behalf of another corporation, (7) undocumented transfers of funds between corporations, and (8) unclear allocation of profits and losses between corporations. *See Rio Grande Valley Gas Co. v. City of Edinburg,* 59 S.W.3d 199, 208–09 (Tex.App.-Corpus Christi 2000, no pet.), *modified on other grounds, PG&E Gas Transmission v. City of Edinburg,* 59 S.W.3d 225 (Tex.App.-Corpus Christi 2001, no pet.); *Paramount Pet. Corp. v. Taylor Rental Ctr.,* 712 S.W.2d 534, 536 (Tex. App.-Houston [14th Dist.] 1986, writ ref'd n.r.e.).

■ El Puerto and Black Pool have no employees, but instead have only boards of directors. There is extensive overlapping of members of the boards. Thus, for the purposes of this analysis, the companies share common employees. The companies share common offices. According to the consolidated annual reports, the corporations share a centralized accounting system. Servicios pays the salaries for the company's employees. Four of the five corporations share the name "Liverpool." The companies provide services to each other: specifically, for example, Servicios provides business services for the companies, and Distribuidora purchases inventory for the companies to sell.

The trial court expressly found that El Puerto and its subsidiaries form a functional whole in carrying out the different aspects of a single merchandising business, and each of El Puerto's subsidiaries exists solely to provide a service to El Puerto's business enterprise. Appellant does not challenge these findings. The trial court concluded that Servicios, Distribuidora, and Black Pool "do nothing more than function as a mere division or branch of a larger whole, such that their contacts with Texas should be attributed to their parent corporation El Puerto."

As stated by Felipe Jacques, El Puerto "as a company has a general view and it uses all of its subsidiaries to accomplish its mission." The companies work jointly with the other companies of the group to achieve their goals. Based on the record evidence, we conclude that the trial court's ruling denying El Puerto's special appearance can be affirmed under the single business enterprise theory of jurisdiction.

In sum, considering the totality of El Puerto's contacts with Texas, El Puerto is subject to general jurisdiction in Texas. *See Schlobohm,* 784 S.W.2d at 359.

*Fair Play and Substantial Justice*

In its final point of error, El Puerto argues that the exercise of jurisdiction in the instant case does not comport with the traditional notions of fair play and substantial justice. According to El Puerto, this "is properly a Mexican case," and the State of Texas has no interest in it. However, appellees argue that Kanarek was a Texas resident when El Puerto committed its tortious acts, and appellee Servi Mundo Llantero U.S.A., Inc., is a Texas corporation, and thus Texas has a strong interest in protecting its citizens.

■ El Puerto's contacts with Texas must be evaluated in light of several factors to determine whether a finding of personal jurisdiction comports with princi-

ples of substantial justice and fair play. *Schlobohm,* 784 S.W.2d at 358; *Falcon,* 5 S.W.3d at 720. These factors include: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and efficient relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Guardian Royal Exch. Ass., Ltd.,* 815 S.W.2d at 228; *Falcon,* 5 S.W.3d at 720. When an international dispute is involved, the following factors should also be considered: (1) the unique burdens placed upon the defendant who must defend itself in a foreign legal system; and (2) the procedural and substantive policies of other nations whose interest are affected as well as the foreign government's interest in its foreign relation policies. *Guardian Royal Exch. Ass., Ltd.,* 815 S.W.2d at 229; *Falcon,* 5 S.W.3d at 720.

▇▇▇ Only in rare cases will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state. *Guardian Royal Exch. Ass., Ltd.,* 815 S.W.2d at 229; *Ahadi,* 61 S.W.3d at 721. The nonresident defendant must present a "compelling" case that the exercise of jurisdiction would be unreasonable. *See In re S.A.V.,* 837 S.W.2d 80, 85 (Tex. 1992); *Guardian Royal Exch. Ass., Ltd.,* 815 S.W.2d at 231.

▇▇▇ El Puerto has failed to discharge this burden. After careful review of these factors, we conclude there is nothing in the record to indicate that litigation in Texas would be excessively burdensome to El Puerto. Many of the events leading to the underlying lawsuit occurred in Texas. Plaintiff below Enrique Kanarek was a Texas resident when the cause of action arose, and Servi Mundo Llantero U.S.A., Inc. is a Texas corporation. El Puerto's alleged acts affected a substantial amount of real property, businesses, and assets located in Texas. The interests of Texas in adjudicating this dispute and the interests of appellees in obtaining convenient and effective relief clearly weigh in favor of the exercise of jurisdiction. We conclude that requiring El Puerto to answer suit in Texas would not offend traditional notions of fair play and substantial justice. We overrule El Puerto's fourth issue.

Having overruled each of El Puerto's issues on appeal, we affirm the order of the trial court denying the special appearance.

## OPINION ON MOTION FOR REHEARING EN BANC

Appellant, El Puerto de Liverpool, S.A. de C.V., has moved for rehearing and for rehearing en banc of this Court's decision, issued May 30, 2002, affirming the denial of its special appearance. El Puerto asserts that this Court's opinion must be withdrawn in light of the Texas Supreme Court's subsequent decision in *BMC Software Belgium, N.V. v. Marchand,* 45 Tex. Sup.Ct. J. 930, —— S.W.2d ——, 2001 WL 1898473, 2002 Tex. LEXIS 103 (June 27, 2002). We overrule El Puerto's motions for rehearing, but issue this opinion on rehearing to acknowledge and discuss this recent authority.

In *BMC,* the Texas Supreme Court lays to rest the split among the courts of appeal regarding the appropriate standard of review for a trial court's order denying a special appearance. *Id.* at —— — ——, 2001 WL 1898473 at *2, 2002 Tex. LEXIS 103 at *4–*5 (contrasting abuse of discretion standard applied by the Fourth Court of Appeals and sufficiency review applied by the majority of appellate courts). Un-

der the test adopted by the supreme court, we review the trial court's factual findings for legal and factual sufficiency and the trial court's legal conclusions *de novo*. *Id.* This is the standard that we applied in the instant case, and the *BMC* opinion confirms the correctness of that standard.

In *BMC*, the Texas Supreme Court further establishes that the party seeking to establish alter ego jurisdiction has the burden of proof to establish the alter ego relationship. *Id.* at 798–800. Although in our opinion we state that this allocation of the burden of proof is questionable, noting a distinct split among the courts of appeals, we did not seek to resolve this issue in the instant case because the result was the same regardless of whether the plaintiff or the defendant bore the burden of proof. Consequently, the supreme court's clarification of the burden does not affect our opinion in this regard.

Finally, in *BMC*, the Texas Supreme Court expressly articulates the test for finding jurisdiction based on an alter ego relationship. *See id.* at 798–99. This is the same test that we applied in the instant case. The Texas Supreme Court neither changed the law nor suggested any standard other than the one applied in our original opinion. Although in *BMC*, the court failed to find jurisdiction based on an alter ego relationship, we note that this holding was largely the result of the plaintiff's failure to offer proof in the record of the allegations underlying the alter ego claim. *Id.* at 799–800. There was no similar failure of proof in this case.

Concurring opinion by Justice DORSEY.

J. BONNER DORSEY, Justice, concurring on motion for rehearing en banc.

I concur in this Court's denial of appellant's motion for rehearing en banc, but write separately to address two matters. First, the status of the plaintiff in the underlying litigation does not bear on the issue of whether the State of Texas can exercise personal jurisdiction over the defendant. Also, that the defendant maintains a bank account in Texas, is not in itself sufficient to confer personal jurisdiction.

I agree that the actions of El Puerto's subsidiaries in the State of Texas subjects El Puerto, the parent corporation, to general *in personam* jurisdiction. *El Puerto de Liverpool, S.A. de C.V. v. Servi Mundi Llanter S.A. de CV*, 82 S.W.3d 622, 637–38 (Corpus Christi 2002, no pet. h.); *see Daimler–Benz Aktiengesellschaft v. Olson*, 21 S.W.3d 707, 720 (Tex.App.-Austin 2000, pet. dism'd w.o.j.), *writ denied, Daimler-Chrysler Aktiengesllschaft*, —— U.S. ——, 122 S.Ct. 1960, 152 L.Ed.2d 1021 (2002). The subsidiaries conduct substantial business in Texas which is integral to the overall operations of the Mexican parent corporation. That kind of systematic and continuous conduct in the state of Texas satisfies the minimum contacts analysis. Texas may properly assert *in personam* jurisdiction over El Puerto on that basis.