This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendants-Appellants Fisher, Gilder Bord Motor Express, Inc. and Cotter Moving and Storage Company have appealed from an order of the Summit County Court of Common Pleas, that denied their motion to vacate a judgment obtained by Plaintiffs-Appellees Kenneth and Cindi Hack in a Texas court and filed in Ohio. This Court affirms.
 I
In the fall of 1999, the Hacks began preparing to relocate from Ohio to Texas. In contemplation of the move, the Hacks contracted for the services of Appellants to transport their possessions from Warren, Ohio to San Antonio, Texas. Appellants loaded and shipped the Hacks' goods according to the terms of the contract, but upon arriving in San Antonio, Appellants informed the Hacks that they were required to pay an amount in excess of the contract price. When the Hacks were unable to satisfy Appellants' demands for additional payment, Appellants refused to deliver the Hacks' possessions.
The Hacks filed a complaint against Appellants in the District Court of Bexar County, Texas. The Hacks subsequently filed a first amended original petition ("amended complaint"), which they have averred was for the sole purpose of correcting the business name of one of the defendants and otherwise duplicated the allegations of the original complaint. The amended complaint alleged causes of action based on fraud and misrepresentation, breach of contract, violations of the Texas Deceptive Trade Practices Act ("DTPA"), conversion, and negligence.
After several attempts to effect service of process on Appellants, the Hacks obtained a default judgment from the Texas trial court. The Hacks then filed the judgment with the clerk of the Summit County Court of Common Pleas pursuant to R.C. 2329.021 et seq. Appellants responded by moving the Summit County Court of Common Pleas to vacate the foreign judgment, on the ground that the Texas court lacked personal jurisdiction to enter judgment against them. The trial court denied the motion to vacate. Appellants have timely appealed, asserting one assignment of error.
 II Assignment of Error "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN DENYING THE MOTION TO VACATE THE TEXAS JUDGMENT."
In their sole assignment of error, Appellants have argued that the trial court erred in denying their motion to vacate the default judgment entered against them by the District Court of Bexar County, Texas. Appellants have argued that the Texas court never acquired personal jurisdiction over them, and the judgment is therefore void ab initio.
Section 1, Article IV of the United States Constitution provides that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." Pursuant to the Full Faith and Credit Clause, Ohio courts must recognize the validity of a foreign judgment rendered by a court of competent jurisdiction. Wyattv. Wyatt (1992), 65 Ohio St.3d 268, 269. However, such a judgment may be collaterally attacked if the foreign court's exercise of personal jurisdiction was either not authorized by the foreign court's internal law or violated the Due Process Clause of the Fourteenth Amendment.Litsinger Sign Co. v. American Sign Co. (1967), 11 Ohio St.2d 1, 4.
A judgment rendered by a court that has no jurisdiction over the person is void. Compuserve, Inc. v. Trionfo (1993), 91 Ohio App.3d 157, 161. Ohio courts retain an inherent power to vacate void judgments. Patton v.Diemer (1988), 35 Ohio St.3d 68, paragraph four of the syllabus. This Court reviews a lower court's assertion of personal jurisdiction de novo. Schnippel Constr., Inc. v. Kreps, 3rd Dist. No. 17-01-16, 2002-Ohio-668, at ¶ 21.
The determination of whether a court has personal jurisdiction over a nonresident requires a two-step analysis. "First, the court must determine whether the state's `long-arm' statute and applicable civil rule confer personal jurisdiction, and, if so, whether granting jurisdiction under the statute and the rule would deprive the defendant of the right to due process of law pursuant to the Fourteenth Amendment to the United States Constitution." (Footnote omitted.) U.S. SprintCommunications Co., Ltd. Partnership v. Mr. K's Foods, Inc. (1994),68 Ohio St.3d 181, 183-184.
There are two components to Appellants' challenge to the Texas court's assertion of personal jurisdiction. This Court will address each in turn.
 The Texas Long Arm Statute
A state's long arm statute or equivalent civil rule provides the basis upon which the exercise of personal jurisdiction is authorized by state law. Durkin v. Gran Turismo Jaguar, 11th Dist. No. 98-L-101, 1999 Ohio App. LEXIS 6120, at *9. The interpretation of the applicable long arm statute or civil rule must be determined by application of the forum state's law. Id. at *9-10. In the instant case, Texas' long arm statute provides the basis for the assertion of personal jurisdiction over Appellants by the District Court of Bexar County. See TEX. CIV. PRAC. 
REM. CODE SECTION 17.041 — 17.045. That statute provides:
 "In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:
 "(1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;
"(2) commits a tort in whole or in part in this state; or
 "(3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state." TEX. CIV. PRAC. REM. CODE SECTION 17.042.
Appellants have argued that the performance of their contract with the Hacks did not constitute "doing business" under TEX. CIV. PRAC. REM. CODE SECTION 17.042(1) because the Hacks were not Texas residents at the time the parties entered into the contract. Appellants have also contended that if any fraudulent misrepresentations were made that induced the Hacks to enter into the contract, such fraudulent misrepresentations occurred in Ohio rather than Texas, and the DTPA would have no application thereto because the Hacks were Ohio residents at the time they were allegedly made. Finally, Appellants have argued that personal jurisdiction was not conferred by TEX. CIV. PRAC. REM. CODE SECTION 17.042(2) because Appellants' alleged refusal to deliver the goods to the Hacks sounds in contract rather then tortious conversion.
The Supreme Court of Texas has determined that the long arm statute's list of activities that constitute "doing business" is not exclusive. BMCSoftware Belg. v. Marchand, (Tex. 2002), ___ S.W.3d ___, 2002 Tex. LEXIS 103, *9. The Texas Supreme Court has also held that "[t]he broad language of the long arm statute's `doing business' requirement permits the statute to reach as far as the federal constitutional requirements of due process will allow." Guardian Royal Exch. v. English China (Tex. 1991),815 S.W.2d 223, 226. "As a result, we consider only whether it is consistent with federal constitutional requirements of due process for Texas courts to assert in personam jurisdiction over [Appellants]." Id.
Jurisdiction over a nonresident defendant comports with due process requirements if that defendant established certain minimum contacts with Texas and maintenance of the suit does not offend "traditional notions of fair play and substantial justice." CSR Ltd. v. Link (Tex. 1996),925 S.W.2d 591, 594, quoting International Shoe Co. v. Washington
(1945), 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95. Sufficient minimum contacts exist where a nonresident defendant has "purposely availed" itself of the privileges and benefits of conducting business in Texas.CSR Ltd., 925 S.W.2d at 594-595, citing Burger King Corp. v. Rudzewicz
(1985), 471 U.S. 462, 475-476, 105 S.Ct. 2174, 85 L.Ed.2d 528. However, a defendant should not be subject to a foreign court's jurisdiction based upon "random," "fortuitous," or "attenuated" contacts. Id.
A foreign defendant's contacts with the state of Texas may give rise to either specific or general personal jurisdiction. Guardian Royal,815 S.W.2d at 227, citing Helicopteros Nacionales de Colombia v. Hall
(1984), 466 U.S. 408, 413-14, 104 S.Ct. 1868, 80 L.Ed.2d 404. General jurisdiction is predicated upon the nonresident defendant's continuous and systematic contacts with the forum state, and requires a showing of substantial activities in the forum state. Id. at 228. Where general jurisdiction is asserted, the cause of action need not arise out of or relate to the defendant's purposeful conduct within the forum state. Id. In order for the defendant's contacts to confer specific jurisdiction, on the other hand, the cause of action must arise out of or relate to the nonresident defendant's contacts with the forum state. Id. For purposes of determining specific jurisdiction, "the minimum contacts analysis focuses on the relationship among the defendant, the forum, and the litigation." Id. "So long as it creates a `substantial connection' with the forum, even a single act can support jurisdiction." Id. at 230, n. 12, quoting Burger King, 471 U.S. at 475 n. 18.
In the case sub judice, it is undisputed that Appellants contracted with the Hacks to transport their household possessions from Ohio to Texas. Pursuant to the contract, the Hacks were to pay Appellants for their transportation services upon delivery of the goods to the Hacks' home in San Antonio. Although the parties entered into the contract in Ohio, the contract required performance in Texas. Appellants therefore purposely availed themselves of the privilege of conducting business in Texas.
Having arrived in Texas, Appellants demanded additional payment and refused to deliver the Hacks' possessions. Appellants thereby failed to perform their obligations under the contract in Texas. Moreover, Appellants continued to exercise dominion and control over the Hacks' belongings after they refused to deliver them to the Hacks' residence in San Antonio. Accordingly, Appellants' allegedly tortious conversion also occurred in Texas. See Baldwin v. Household International, Inc. (Tex.App. 2001), 36 S.W.3d 273, 277 ("When reaching a decision to exercise or decline jurisdiction based on the defendant's alleged commission of a tort, the trial court should rely only upon the necessary jurisdictional facts and should not reach the merits of the case."). The Hacks' allegation under their DTPA claim that Appellants attempted to exact additional funds and refused to perform the contract until the Hacks paid more money also concerns conduct by Appellants that occurred in Texas. Consequently, we conclude that Appellants engaged in contacts with Texas sufficient to give rise to specific jurisdiction.
We must next determine whether the Texas court's assertion of personal jurisdiction comports with fair play and substantial justice. GuardianRoyal, 815 S.W.2d at 231; Asahi Metal Indus. Co. v. Superior Court
(1987), 480 U.S. 102, 113-15, 107 S.Ct. 1026, 94 L.Ed.2d 92. When relevant, the following factors are pertinent to the "fair play and substantial justice" inquiry:
 "(1) [T]he burden on the defendant; (2) the interests of the forum state in adjudicating the dispute (including the state's special regulatory interest in areas such as insurance); (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies." Guardian Royal, 815 S.W.2d at 231.
 "Only in rare cases, however, will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." Id.
In the instant case, the burden on Appellants to appear and defend themselves in Texas is minimal. Appellants contracted with the Hacks to transport their goods from Ohio to Texas, and their actions once in Texas gave rise to the causes of action alleged in the Hacks' complaint. The state of Texas also has a significant interest in adjudicating the dispute. The contract was to be performed in Texas, and the Hacks were residents of Texas at the time of Appellants' allegedly wrongful conduct. To require the Hacks to return to Ohio to file suit against Appellants clearly would not accommodate the plaintiffs' interest in obtaining convenient and effective relief. Accordingly, the exercise of personal jurisdiction over Appellants by the Texas court did not violate "traditional notions of fair play and substantial justice."
 Service of Process
Appellants have also argued that the Texas court never acquired personal jurisdiction over them because they were not properly served with the Hacks' pleadings. Appellants have contended that they never received a copy of the original complaint, and the substituted service authorized by the trial court was defective because it did not authorize substituted service of the amended complaint.
The Texas long arm statute provides for methods of service on nonresident defendants:
 "(a) The secretary of state is an agent for service of process or complaint on a nonresident who:
 "(1) is required by statute to designate or maintain a resident agent or engages in business in this state, but has not designated or maintained a resident agent for service of process[.]
"* * *
 "(b) The secretary of state is an agent for service of process on a nonresident who engages in business in this state, but does not maintain a regular place of business in this state or a designated agent for service of process, in any proceeding that arises out of the business done in this state and to which the nonresident is a party." TEX. CIV. PRAC. REM. CODE SECTION 17.044(a) — (b).
Once the secretary of state has been served, TEX. CIV. PRAC. REM. CODE SECTION 17.045 requires the secretary to mail the process or notice by registered or certified mail, return receipt requested.
The Hacks served the secretary of state with their citation and original petition in compliance with TEX. CIV. PRAC. REM. CODE SECTION 17.044. The secretary of state then forwarded the process to Appellants by registered mail, return receipt requested. However, the process forwarded to each Appellant was returned to the secretary "unclaimed."
The Hacks then attempted to effect personal service on Appellants pursuant to the Texas Rules of Civil Procedure:
 "(a) Unless the citation or an order of the court otherwise directs, the citation shall be served by any person authorized by Rule 103 by
 "(1) delivering to the defendant, in person, a true copy of the citation with the date of delivery endorsed thereon with a copy of the petition attached thereto[.]" Tex.R.Civ.P. 106(a)(1).
The Hacks employed private process servers in Ohio to serve Appellants' statutory agents or corporate officers at their respective places of business. The process servers twice attempted to effect personal service, but the individuals they encountered at each of the business addresses refused to accept service on Appellants' behalf.
Finally, the Hacks filed a motion in the Texas court for an order authorizing substituted service pursuant to Tex.R.Civ.P. 106(b)(1), which provides:
 "(b) Upon motion supported by affidavit stating the location of the defendant's usual place of business or usual place of abode or other place where the defendant can probably be found and stating specifically the facts showing that service has been attempted under either (a)(1) or (a)(2) at the location named in such affidavit but has not been successful, the court may authorize service
 "(1) by leaving a true copy of the citation, with a copy of the petition attached, with anyone over sixteen years of age at the location specified in such affidavit[.]"
The Texas court granted the motion for substituted service, and a copy of the Hacks' amended complaint was personally delivered to a "Harry Hensperger" and a "Jane Doe" employee at Appellants' respective places of business.
Appellants have argued that the Hacks moved the Texas court for an order allowing substituted service of the original complaint, but the Hacks' amended complaint was delivered to Appellants' places of business. Appellants have maintained that substituted service of the amended complaint was never authorized by the court, and such service "does not comport with fundamental notions of fairness as to adequate notice to a party regarding the filing of an action in a foreign court."
Under Texas law, the filing of an amended complaint substitutes for and supercedes the original complaint:
 "Unless the substituted instrument shall be set aside on exceptions, the instrument for which it is substituted shall no longer be regarded as a part of the pleading in the record of the cause, unless some error of the court in deciding upon the necessity of the amendment, or otherwise in superseding it, be complained of, and exception be taken to the action of the court, or unless it be necessary to look to the superseded pleading upon a question of limitation." Tex.R.Civ.P. 65.
Consequently, after the Hacks filed their amended complaint, the original complaint was superseded and no longer constituted a pleading in the case. Drake Ins. Co. v. King (Tex. 1980), 606 S.W.2d 812, 817. As the amended complaint was filed prior to the motion for substituted service, the Texas court's order permitting substituted service could only have authorized service of the amended complaint. Substituted service of the amended complaint was therefore properly effected.
For all of the foregoing reasons, the Texas court acquired personal jurisdiction to enter default judgment against Appellants. The Summit County Court of Common Pleas did not err in denying Appellants' motion to vacate the default judgment filed against them by the Hacks.
 III
Appellants' assignment of error is overruled. The judgment of the trial court is affirmed.
SLABY, P.J., CARR, J. CONCUR.