

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-20-00387-CV

———————————————

MICHELE MCKENZIE ALFORD-SHAW, AS INDEPENDENT EXECUTRIX OF THE ESTATE OF ROBIN DALE SHAW, DECEASED, Appellant

V.

JUDY NICHOLSON, INDIVIDUALLY, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF MISTY NICHOLSON, DECEASED, AND AS GUARDIAN AND NEXT FRIEND OF LBN, A MINOR; DOMINIC RIOLA; AND KARLA RIOLA, Appellees

———————————————————————————

On Appeal from the 96th District Court
Tarrant County, Texas
Trial Court No. 096-306509-19

———————————————————————————

Before Kerr, Womack, and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

After her husband was killed in Texas while piloting a plane, appellant Michele McKenzie Alford-Shaw, who does not live in Texas, acted as the independent executor for his estate in a Texas probate court. Later, the families of two passengers who were also killed in the crash named Shaw, in her capacity as independent executor, as a defendant in their negligence suit arising from the plane crash. Shaw filed a special appearance and argued that because the estate administration had been informally closed, she was no longer the independent executor when the negligence suit was filed; thus, there were no minimum contacts supporting personal jurisdiction. The trial court denied the special appearance. We conclude that the independent administration was not informally closed because the facts and circumstances in the probate court did not show that the estate's assets had been distributed and, thus, that further administration was not needed. And because the independent administration was not closed, Shaw's actions in the Texas probate court provided the requisite minimum contacts for specific jurisdiction, and due process would not be offended by a Texas trial court exercising personal jurisdiction over Shaw as a nonresident. Thus, we affirm the trial court's denial order.

## I. BACKGROUND

On April 28, 2017, Robin Shaw, Misty Nicholson, and Scott Riola died in an air-ambulance plane crash in Potter County, Texas. Robin was the pilot; Scott and Misty were "medical personnel." Robin's will named his wife, Shaw, as his estate's

2

independent executor and sole beneficiary. *See* Tex. Est. Code Ann. § 401.001(a). On October 25, 2017, Shaw filed an application in the County Court of Callahan County, Texas (the probate court), to admit Robin's will to probate and sought letters testamentary. *See id.* §§ 256.051, 301.051(1), 402.001. Even though she lived in Ohio, Shaw filed the application in Callahan County because Robin had been "domiciled and had a fixed place of residence" in Callahan County. *See id.* § 33.001(a)(1). The probate court clerk posted a citation to all interested persons about the application and stated that the application could be acted on no earlier than November 6, 2017. *See id.* §§ 51.053, 303.001. On November 21, 2017, the probate court admitted Robin's will to probate, issued letters testamentary, and appointed Shaw as the independent executor. *See id.* §§ 256.201, 306.001, 306.003, 402.001. Because Shaw was an Ohio resident, she appointed a resident agent for service of process and filed the appointment in the probate court. *See id.* § 304.003(3)(B).

On January 22, 2018, appellee Judy Nicholson (appearing individually, as the personal representative of Misty's estate, and as the guardian of Misty's minor child) filed a negligence suit against the owner of the plane—Rico Aviation, LLC—in Potter County. She alleged that Rico Aviation negligently inspected and operated the plane and that it was liable "under *respondeat superior* as the company had operational control of the flight and is responsible for the actions of its agent, the pilot." Robin, Misty, and Scott had been employed by Rico Aviation; however, Rico Aviation did not maintain workers'-compensation insurance.

3

On February 12, 2018, Shaw filed an affidavit in lieu of an inventory, appraisement, and list of claims (the inventory affidavit). *See id.* § 309.056. In the filing, she cited Section 309.056 of the Estates Code and stated in one sentence that there were "no unpaid debts of the estate and . . . that there [were] no beneficiaries under the Last Will and Testament of Robin . . . other than Affiant." Shaw did not file a closing report or a notice of estate closing, but she was not required to do so. *See id.* §§ 405.005, 405.006, 405.012.

It is not clear what happened to Nicholson's Potter County suit (Shaw states that it was dismissed). In any event, Nicholson and Scott's parents—appellees Dominic and Karla Riola—filed suit in Tarrant County against Rico Aviation on March 1, 2019, alleging that the plane's maintenance had occurred in Tarrant County. *See* Tex. Civ. Prac. & Rem. Code Ann. § 15.002(a)(1). Rico Aviation answered and filed a third-party petition, naming Greenpoint Aerospace and Fieldtech Avionics and Instruments, Inc. as third-party defendants and alleging that Greenpoint and Fieldtech had negligently performed the plane's maintenance. *See* Tex. R. Civ. P. 38(a). On April 12, 2019, Nicholson and the Riolas amended their petition to add negligence claims against Greenpoint and Fieldtech for their alleged negligent actions surrounding the plane's maintenance.[1]

---

[1]Greenpoint and Fieldtech were later granted leave to designate the manufacturer of the plane's autopilot system—Honeywell Aerospace—as a responsible third party. *See* Tex. Civ. Prac. & Rem. Code Ann. § 33.004.

In June 2019, Shaw moved from Ohio to Kentucky.

On September 3, 2020, after discovery concluded and one month before the scheduled trial on Nicholson and the Riolas' negligence suit, Nicholson sought leave to amend the petition to add claims against Shaw as the independent executor of Robin's estate.[2]  *See* Tex. Est. Code Ann. § 403.059.  Nicholson alleged that discovery had revealed that "a proximate cause of the crash was the negligence of pilot [Robin] Shaw" and that she had discovered Rico Aviation's insurance carrier would not cover claims against Rico Aviation asserted by its employees.  On September 16, 2020, Nicholson filed a notice of claim in the probate court based on the negligence suit, and the probate clerk notified Shaw and Shaw's resident agent.[3]  *See id.* §§ 355.002, 355.065, 403.055.  On September 17, 2020, the Tarrant County trial court granted leave to amend the petition; Nicholson and the Riolas filed the amended petition that same day.  In the amended petition, Nicholson and the Riolas alleged that all parties were Texas residents or doing business in Texas.  Specifically as to Shaw, Nicholson and the Riolas alleged that Shaw was Robin's estate's independent executor and that she had appointed a Texas resident agent for service of process.

Shaw filed a verified special appearance, attaching her September 9, 2020 declaration and her October 17, 2020 "jurisdictional declaration."  *See* Tex. R. Civ.

[2]Although the motion to amend was entitled "Plaintiffs' Motion for Leave to File Second Amended Petition," the Riolas were not mentioned as movants.

[3]The Riolas did not join in the notice of claim.

5

P. 120a.1. Shaw averred that because all the debts and claims of Robin's estate had been paid and all estate property distributed, the estate had been closed "as a matter of law"—ending her authority as the independent executor and estate representative—in February 2018, which was before Nicholson and the Riolas had named Shaw as a defendant. She asserted, therefore, that because she was a Kentucky resident, a Texas court could not exercise personal jurisdiction over her. Nicholson responded[4] and asserted that because Shaw had taken no demonstrable action triggering a closing of the independent administration and had provided no competent evidence that she had informally closed it, she did not conclusively prove that the estate had been closed; thus, she could be brought into a Texas court based on her actions in Texas as the independent executor of Robin's estate. Nicholson also contended that Shaw's affidavit was statutorily deficient and could not serve to informally close the independent administration. The trial court denied Shaw's special appearance, and she filed this accelerated, interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7).

## II. LEGAL STANDARDS GOVERNING PERSONAL-JURISDICTION REVIEW

### A. APPELLATE LENS

The standards of review and the burdens of proof applicable to our review of a trial court's ruling on a special appearance are well-established. Whether a trial court

---

[4]The Riolas did not respond to the special appearance.

6

has personal jurisdiction is a question of law. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). A plaintiff has the initial burden to plead sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010); *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 17.042. This minimal burden is met by an allegation that the nonresident defendant is doing business in Texas. *Dole v. LSREF2 APEX 2, LLC*, 425 S.W.3d 617, 624 (Tex. App.—Dallas 2014, no pet.) (citing *Assurances Générales Banque Nationale v. Dhalla*, 282 S.W.3d 688, 695 (Tex. App.—Dallas 2009, no pet.)). Once a plaintiff sufficiently pleads such jurisdictional allegations, the burden shifts to the defendant to negate the bases of personal jurisdiction asserted by the plaintiff. *Kelly*, 301 S.W.3d at 658; *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007).

In determining whether the nonresident defendant sufficiently negated the pleaded bases for personal jurisdiction, the trial court frequently must resolve questions of fact. *BMC Software*, 83 S.W.3d at 794. When, as here, the trial court does not issue findings of fact,[5] we should presume that the trial court resolved all factual disputes in favor of its jurisdictional ruling. *See Old Republic Nat'l Title Ins. Co. v. Bell*,

---

[5]Shaw timely filed a request for findings and conclusions and a notice that they were past due. *See* Tex. R. Civ. P. 296–97. The trial court did not file findings and conclusions, and none were required. *See* Tex. R. App. P. 28.1(c).

549 S.W.3d 550, 558 (Tex. 2018); *Moki Mac*, 221 S.W.3d at 574; *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002); *BMC Software*, 83 S.W.3d at 795. The operative facts in this case are undisputed; thus, we rely on a de novo review of the trial court's application of law to its ultimate jurisdictional ruling. *See Am. Type*, 83 S.W.3d at 806; *Crystalix Grp. Int'l, Inc. v. Vitro Laser Grp. USA, Inc.*, 127 S.W.3d 425, 427 (Tex. App.—Dallas 2004, pet. denied); *see also LaLonde v. Gosnell*, 593 S.W.3d 212, 220 (Tex. 2019) ("Deference must be afforded to the trial court's disposition of disputed facts, but when there are none, as here, our review is entirely de novo.").

## B. LONG-ARM STATUTE AND DUE PROCESS

A special appearance challenges the trial court's personal jurisdiction over a defendant. Texas courts may not exercise personal jurisdiction over a nonresident defendant unless federal due-process requirements and the Texas long-arm statute are satisfied. Tex. Civ. Prac. & Rem. Code Ann. §§ 17.041–.045; *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 412–13 & n.7 (1984). The Texas long-arm statute and the requirements of due process are coextensive; thus, the long-arm statute is satisfied if the exercise of personal jurisdiction comports with federal due process. *See Guardian Royal Exch. Assurance, Ltd. v. Eng. China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991). Federal due process is satisfied if (1) the nonresident defendant has "minimum contacts" with Texas and (2) the exercise of personal jurisdiction over the nonresident defendant does not offend "traditional notions of fair play and substantial

8

justice." *Int'l Shoe Co. v. Wash., Office of Unemp. Comp. & Placement*, 326 U.S. 310, 316 (1945).

## 1. Minimum Contacts

A defendant's contacts may give rise to two types of personal jurisdiction: specific or general jurisdiction. *Cornerstone Healthcare Grp. Holding, Inc. v. Nautic Mgmt. VI, L.P.*, 493 S.W.3d 65, 71 (Tex. 2016); *Moki Mac*, 221 S.W.3d at 575–76.

When specific jurisdiction is asserted, we focus on the relationship between the defendant, the forum, and the litigation. *Moki Mac*, 221 S.W.3d at 575–76. Minimum contacts, giving rise to specific jurisdiction over a defendant, are present when a nonresident defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *see Old Republic*, 549 S.W.3d at 559. In determining purposeful availment, we consider (1) the defendant's own actions but not the unilateral activity of another party, (2) whether the defendant's actions were purposeful rather than "random, isolated, or fortuitous," and (3) whether the defendant sought "some benefit, advantage, or profit by 'availing' itself" of the privilege of doing business in Texas. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005); *see also Old Republic*, 549 S.W.3d at 565–66 & n.5. The nonresident defendant's contacts are considered as a whole and not in isolation, focusing on the quality and not the quantity of the contacts. *Retamco Operating*, 278 S.W.3d at 339; *Guardian Royal*, 815 S.W.2d at 230 n.11.

9

On the other hand, general jurisdiction is a more demanding test to meet than specific jurisdiction. *Old Republic*, 549 S.W.3d at 565. General jurisdiction is not dispute-dependent but requires continuous and systematic business contacts. *Helicopteros*, 466 U.S. at 414–16; *Old Republic*, 549 S.W.3d at 565. But even continuous and systematic contacts will be insufficient to confer general jurisdiction if they do not render the nonresident defendant "essentially at home" in the chosen forum. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

### 2. Fair Play and Substantial Justice

If minimum contacts are present, the nonresident defendant then bears the burden to present a compelling case that the exercise of personal jurisdiction would nevertheless offend traditional notions of fair play and substantial justice. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985); *Furtek & Assocs., L.L.C. v. Maxus Healthcare Partners, LLC*, No. 02-15-00309-CV, 2016 WL 1600850, at *3 (Tex. App.—Fort Worth Apr. 21, 2016, no pet.) (mem. op.). In deciding if the nonresident defendant met his burden, we are to consider (1) the burden on the nonresident defendant, (2) the interests of the forum state in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the states in furthering fundamental substantive social policies. *Guardian Royal*, 815 S.W.2d at 231. "Only in rare cases . . . will the exercise

10

of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Id.*

## III.  APPLICATION OF STANDARDS TO PERSONAL-JURISDICTION FACTS

### A.  NICHOLSON AND THE RIOLAS' BURDEN TO PLEAD SUFFICIENT JURISDICTIONAL ALLEGATIONS

In her first sub-issue,[6] Shaw argues that Nicholson and the Riolas failed to plead sufficient facts establishing personal jurisdiction over Shaw as a nonresident. To meet their minimal pleading burden, Nicholson and the Riolas had to show the actions upon which jurisdiction is based but did not have to make a prima facie showing of the existence or merits of a cause of action. *See Baldwin v. Household Int'l, Inc.*, 36 S.W.3d 273, 277 (Tex. App.—Houston [14th Dist.] 2001, no pet.); *Arterbury v. Am. Bank & Trust Co.*, 553 S.W.2d 943, 947 (Tex. App.—Texarkana 1977, no writ). Nicholson and the Riolas alleged that all defendants, including Shaw, were residents of Texas or were doing business in Texas. To support their "doing business" assertion as to Shaw, they alleged that she was acting as the independent executor of Robin's estate in a Texas probate court and had designated a resident agent for service of process. Nicholson and the Riolas raised a negligence claim against Robin's estate based on Robin's alleged failure "to properly navigate and operate the subject aircraft

---

[6]Shaw raises one appellate issue: "Whether the Trial Court erred by denying [Shaw's] Special Appearance." This issue, in turn, incorporates four "sub-issues," in which she raises the grounds allegedly supporting her assertion of error.

[in Texas] in a safe and competent manner," which proximately caused the crash and Misty's death.[7] And they continued to allege that Rico Aviation was liable for Robin's actions under a respondeat superior theory.

In their briefing and at oral argument, Nicholson and the Riolas specifically limit their personal-jurisdiction theory to Shaw's actions as Robin's estate's independent executor. We note that Nicholson and the Riolas alleged that Robin committed a tort in Texas, which arguably could have brought Shaw in her capacity as Robin's estate's independent executor within the reach of the Texas long-arm statute. *See* Tex. Civ. Prac. & Rem. Code Ann. § 17.042(2); *see also id.* § 71.021(b) (providing personal-injury action survives against deceased defendant and defendant's legal representatives); *Ferreira v. Butler*, 575 S.W.3d 331, 334 (Tex. 2019) (recognizing executor stands in decedent's shoes); *Price v. Est. of Anderson*, 522 S.W.2d 690, 691 (Tex. 1975) ("A suit seeking to establish the decedent's liability . . . should ordinarily be instituted against the personal representative or, under appropriate circumstances, against the heirs or beneficiaries."); *Bruno's Inc. v. Arty Imports, Inc.*, 119 S.W.3d 893, 898–99 (Tex. App.—Dallas 2003, no pet.) (concluding plaintiff sufficiently pleaded jurisdictional facts under a respondeat superior theory). However, Nicholson and the Riolas have expressly disclaimed those allegations as supportive of their personal-jurisdiction assertion, and we decline to make the argument in their stead, especially as

---

[7]They did not allege that Robin's negligence was a proximate cause of Scott's death.

to a matter on which they carried the burden. *See, e.g., Craaybeek v. Craaybeek*, No. 02-20-00080-CV, 2021 WL 1803652, at *5 (Tex. App.—Fort Worth May 6, 2021, pet. filed) (mem. op.); *Cantu v. Cantu*, 556 S.W.3d 420, 434–35 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

In any event, the Texas long-arm statute extends personal jurisdiction to those "doing business" in Texas. Tex. Civ. Prac. & Rem. Code Ann. § 17.042. Nicholson and the Riolas' allegation that Shaw did so by acting as the independent executor in the probate court was sufficient to meet their minimal, initial pleading burden. *See Dole*, 425 S.W.3d at 624; *In re Est. of Davis*, 216 S.W.3d 537, 545–46 (Tex. App.—Texarkana 2007, pet. denied). We overrule Shaw's first sub-issue.

## B. SHAW'S BURDEN TO NEGATE ALLEGED JURISDICTIONAL BASIS

### 1. The Estate's Independent Administration Was Not Informally Closed

Shaw asserts in her second sub-issue that because she conclusively established that the independent administration was informally closed at the time Nicholson and the Riolas named her as a defendant in her capacity as independent executor,[8] she negated this pleaded jurisdictional basis. Shaw relies on the inventory affidavit she had filed in the probate court and argues that the information she included served to

---

[8]Nicholson and the Riolas did not file suit against Shaw individually as Robin's sole beneficiary. *Cf. Moore v. Barlow*, 352 S.W.2d 804, 806 (Tex. App.—San Antonio 1961, writ ref'd n.r.e.) (holding executor could be named and held individually liable for deceased husband's tort because estate had no debts, estate had been fully administered, and executor was sole devisee).

13

close the independent administration "by operation of law." She also relies on her special-appearance declarations in which she declared that all estate debts had been paid no later than February 8, 2018; all estate assets had been transferred, sold, or donated no later than February 8, 2018; and that she had not acted as the independent executor since February 8, 2018.[9] In her September 2020 special-appearance declaration, Shaw included a chart showing the estate's property and assets and each's "Status"—"closed out," distributed, donated, etc. In sum, Shaw contends that the critical jurisdictional inquiry here is whether the independent administration was open or closed at the time Nicholson and the Riolas named her as a defendant. *Cf.* Tex. Est. Code Ann. § 405.007(b) (providing if independent administration is formally closed, independent executor's power and authority terminate).

Independent estate administrations generally are not formally closed in Texas, presumably because an independent executor is not required to formally close an independent administration by filing a closing report, filing a notice of closing estate, or seeking a declaratory judicial discharge. *See id.* § 405.012; *Est. of Stegall*, No. 02-17-00410-CV, 2019 WL 6205244, at *6 (Tex. App.—Fort Worth Nov. 21, 2019, no pet.) (mem. op.). *See generally* Tex. Est. Code Ann. § 402.001 (mandating after probate court appoints independent executor and after independent executor files inventory affidavit, further action by probate court prohibited unless otherwise provided in

---

[9]Shaw signed the inventory affidavit on February 8, 2018, but filed it in the probate court on February 12, 2018.

Estates Code).  In the absence of a formal closing, an independent administration may be considered closed when the facts and circumstances show that all debts and claims against the estate have been paid, the estate's net assets have been distributed, and there is no need for further administration.  *See Stegall*, 2019 WL 6205244, at *6; *In re Est. of Teinert*, 251 S.W.3d 66, 67 (Tex. App.—Waco 2008, pet. denied) (per curiam); 17 M. K. Woodward et al., *Tex. Practice Series: Probate and Decedents' Estates* § 513.5 (2020).  *See generally* William I. Marschall Jr., *Independent Administration of Decedents' Estates*, 33 Tex. L. Rev. 95, 116 (1954) ("[I]ndependent executors may close an administration and relinquish the property to the heirs or devisees, without the formality of judicial sanction or with judicial sanction, if they so choose.").  Accordingly, to determine whether the facts and circumstances indicate that an independent administration was informally closed, "the issue is whether the debts of the estate have been paid and the property distributed such that there was no need for further administration."  *In re Est. of Rowan*, No. 05-06-00681-CV, 2007 WL 1634054, at *3 (Tex. App.—Dallas June 7, 2007, no pet.) (mem. op.).

Here, Shaw's inventory affidavit failed to address whether the estate's assets had been distributed.  Although she averred that the estate had no unpaid debts and that she was the sole beneficiary, she wholly failed to state that the estate's assets had been distributed.    Until an estate's assets are distributed, an independent administration cannot be considered closed, even informally.  *See Stegall*, 2019 WL 6205244, at *6; *Teinert*, 251 S.W.3d at 67.  Of course, because an inventory affidavit is

15

filed within 90 days after the probate court appoints a personal representative, such an affidavit is not statutorily required to state that the assets have been distributed or that further administration is not needed. *See* Tex. Est. Code Ann. §§ 309.051(a), 309.056(b). In fact, one of the purposes of an inventory affidavit is to allow an interested person[10] to apply to the probate court for an order compelling the independent executor to provide a copy of the full inventory, appraisement, and list of claims. *See id.* § 309.056(c); 2 Thomas M. Featherston Jr. et al., *Tex. Practice Guide: Probate* § 10:13 (2020).

Although Shaw's affidavit met the statutory requirements for an inventory affidavit, it did not provide the information that would show further administration was not needed. *See Rowan*, 2007 WL 1634054, at *3. And Shaw's after-the-fact declarations, which were filed in the trial court in support of her special appearance, do not equate to probate-court facts and circumstances establishing that the independent administration had been informally closed in 2018. *Cf. Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex. 1981) ("Persons interested in an estate admitted to probate are charged with the contents of the probate records.").[11] Thus, we conclude that the

---

[10]Nicholson and the Riolas would be considered interested persons. *See* Tex. Est. Code Ann. § 22.018(1).

[11]We recognize that a special appearance is to be decided on the basis of any submitted affidavits or attachments. *See* Tex. R. Civ. P. 120a.3. But Shaw's special-appearance declarations add facts that were not included in her inventory affidavit and were not otherwise apparent in the probate court.

independent administration was not informally closed at the time Nicholson and the Riolas named Shaw as a defendant in her capacity as Robin's estate's independent executor. We overrule sub-issue two.

### 2. Shaw's Actions as Independent Executor Establish Specific Jurisdiction

In her third sub-issue, Shaw argues that the evidence was legally and factually insufficient to support the trial court's implicit finding that she had sufficient minimum contacts with Texas that would confer general or specific personal jurisdiction. Regarding specific jurisdiction, she contends that she did not purposefully avail herself of conducting business activities in Texas because by the time Nicholson and the Riolas named her as a defendant, the estate was informally closed and her obligations and duties as independent executor had ended. We have rejected this argument and conclude that Shaw failed to negate specific jurisdiction. *See, e.g.*, *Davis*, 216 S.W.3d at 545–46. Because Shaw did not negate specific jurisdiction, we need not address whether Shaw negated general jurisdiction. *See E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 296 (5th Cir. 2020). We overrule sub-issue three.

### C. SHAW'S BURDEN TO ESTABLISH FAIR-PLAY AND SUBSTANTIAL-JUSTICE NOTIONS OFFENDED

In her fourth sub-issue, Shaw contends that the exercise of personal jurisdiction would nevertheless offend traditional notions of fair play and substantial justice. She argues that her age, her poor health, Texas's minimal interest in bringing

17

a nonresident and nontortfeasor into Texas, Nicholson's and the Riolas' ability to obtain effective relief without Shaw's presence in the suit, the procedural complications that would result from Shaw's presence in the suit, and Texas and Kentucky's shared interest in probate finality all show that the exercise of personal jurisdiction would offend fair play and substantial justice. Again, it is rare that these notions will be offended if minimum contacts are established. *Cornerstone Healthcare*, 493 S.W.3d at 74; *Guardian Royal*, 815 S.W.2d at 231.

Shaw's arguments do not meet her burden to present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. In other words, this is not a rare instance where fair play and substantial justice would be offended even though minimum contacts with Texas are present. *See Guardian Royal*, 815 S.W.2d at 231. Shaw was able to administer Robin's estate in a Texas probate court even though she did not live in Texas. Although Nicholson and the Riolas arguably could recover on their negligence claims from the other named defendants, they are correct that such a recovery would not account for any percentage of responsibility assigned to Robin. Any procedural issues that could arise by Shaw's presence in the suit would not put Shaw at a disadvantage. And Shaw fails to explain how Kentucky's interest in a deceased Texas resident's estate would be equivalent to Texas's interest. We conclude that exercising personal jurisdiction over Shaw would not offend traditional notions of fair play and substantial justice. *See, e.g.*, *Cornerstone Healthcare*, 493 S.W.3d at 74; *Stein v. RevCap,*

18

*LLC*, No. 04-16-00610-CV, 2017 WL 1244439, at *5 (Tex. App.—San Antonio Apr. 5, 2017, no pet.) (mem. op.); *Motor Car Classics, LLC v. Abbott*, 316 S.W.3d 223, 233 (Tex. App.—Texarkana 2010, no pet.); *Davis*, 216 S.W.3d at 547–48. We overrule Shaw's fourth sub-issue.

## IV. CONCLUSION

Nicholson and the Riolas rely solely on Shaw's conducting business in Texas as Robin's estate's independent executor to establish personal jurisdiction over Shaw, which they sufficiently pleaded in their negligence suit. However, Shaw has failed to negate this alleged jurisdictional basis. Although she filed an inventory affidavit while acting as Robin's estate's independent executor in a Texas probate court, this affidavit did not operate to informally close the independent administration because it did not indicate that the assets had been distributed. And no other facts and circumstances in the probate court so indicated. Accordingly, the independent administration was not closed when Nicholson and the Riolas filed suit against Shaw in her capacity as the estate's independent executor based on Robin's alleged negligence leading to the plane crash. Because the independent administration was not closed, Shaw's actions and status as an independent executor in a Texas probate court provided the requisite minimum contacts to confer specific, personal jurisdiction over Shaw in Texas. Shaw has not met her burden to provide a compelling case that bringing her into a Texas court would offend traditional notions of fair play and substantial justice. Thus, the exercise of personal jurisdiction over Shaw comports with due process. For these

19

reasons, we overrule Shaw's appellate issue and affirm the trial court's order denying Shaw's special appearance.

/s/ Brian Walker

Brian Walker
Justice

Delivered:  July 1, 2021